Samuel M. Stricklin (State Bar No. 19397050)
Michael L. Dinnin (State Bar No. 05888100)
Brian C. Mitchell (State Bar No. 24046452)
Bracewell and Giuliani LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202-2711
Telephone: (214) 468-3800
Facsimile: (214) 468-3888
Email: michael.dinnin@bgllp.com
Email: brian.mitchell@bgllp.com

Attorneys for Hillcrest Bank, N.A.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| | § | |
| MA BB OWEN, L.P. | § | CASE NO. 11-40645 |
| | § | |
| Debtors. | § | |

**HILLCREST BANK, N.A.'S MOTION FOR RELIEF
FROM THE AUTOMATIC STAY AGAINST THE MCKINNEY PROPERTY**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

Hillcrest Bank, N.A. ("Hillcrest"), a secured creditor and party in interest in the above-styled bankruptcy case, hereby files its Motion for Relief from the Automatic (the "Motion") pursuant to 11 U.S.C. § 362 and Federal Rule of Bankruptcy Procedure 4001, and in support thereof respectfully represents as follows:

**HILLCREST BANK'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY** – PAGE 1

## JURISDICTION

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

2. On February 28, 2011 (the "Petition Date"), MA BB Owen, LP ("BB Owen" or "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Eastern District of Texas, Plano Division (the "Bankruptcy Court"), Cause No. 11-40645.

3. Prior to the Petition Date, on or about December 15, 2006, Hillcrest and BB Owen entered into a secured loan agreement (the "Loan Agreement") whereby Hillcrest agreed to loan BB Owen up to $22,800,000.00 in connection with the acquisition of real property located in McKinney, Collin County, Texas (the "Property"). A true and correct copy of the Loan Agreement is attached as Exhibit A. Pursuant to the terms of the Loan Agreement, and contemporaneously therewith, BB Owen executed a promissory note (the "Note") for the principal sum of $22,800,000.00 in favor of Hillcrest. A true and correct copy of the Note is attached as Exhibit B. The Note was secured by a deed of trust granted by BB Owen in favor of Hillcrest ("BB Owen Deed of Trust"). A true and correct copy of the BB Owen Deed of Trust is attached as Exhibit C.

4. The initial maturity date of the Note, for full repayment of the entire principal balance and unpaid interest to Hillcrest by BB Owen, was December 15, 2008. *See* the Note at Section 2.3. The maturity date was subsequently modified via agreement, so that the maturity date under the Note is June 15, 2011. *See* Renewal Extension and Modification Agreement, a true and correct copy of which is attached as Exhibit D.

5. As a result of the aforementioned Loan Agreement, Note, and Deed of Trust, Hillcrest has properly perfected, first priority liens on the Property.

6. Prior to the Petition Date, BB Owen defaulted in the payment of the Loan Agreement and Note. As a result, the indebtedness evidenced by the Note was wholly due and payable. Hillcrest notified BB Owen of the events of default on December 20, 2010. *See* Notice of Default, attached as Exhibit F. BB Owen failed to cure the defaults, and on January 26, 2011, Hillcrest accelerated the outstanding indebtedness ("Indebtedness") under the Note and Loan Agreement, as permitted under the Loan Agreement. BB Owen failed to pay the amounts due under the Note, and Hillcrest noticed the Property for a non-judicial foreclosure sale to occur on March 1, 2011. However, BB Owen filed for Chapter 11 protection the day before the noticed sale could take place.

7. The Indebtedness remains unpaid, and as of March 3, 2011, the approximate amount due and owing by BB Owen under the Note and Loan Agreement, including principal and accrued interest, was $17,891,780.27. Interest and penalties continue to accrue on this amount.

8. Since the filing of this action, BB Owen is not receiving any proceeds or revenue from the Property. This is a Single Asset Real Estate case; the Property is not generating income and there are no structures on the Property with the potential to generate income. Hillcrest is unaware of any viable purchasers currently engaging in discussions with the BB Owen regarding the purchase or sale of the Property. BB Owen has no prospects for an exit from this bankruptcy proceeding.

9. BB Owen and filed a First Amended Joint Plan of Reorganization on May 26,

2011 (the "Plan").[1]  *See* Docket No. 20.  The Plan purportedly provides for a reorganization of BB Owen and an equity investment, but does not provide a reasonable plan of implementation or success and does not have a reasonable probability of being confirmed.  Essentially, the Debtors seek to have Hillcrest bear all of the risk associated with the Debtors' already-failed business venture, for a period of 10 years at an interest rate of 2.5% (amortized over a 40 year term), while the Debtors' equity holders retain their equity and any upside that may become available at the end of the Plan term.

## RELIEF REQUESTED

10.  Hillcrest respectfully requests that the Court enter an Order granting it relief from the automatic stay so that Hillcrest can conduct a non-judicial foreclosure sale on the Property pursuant to the Loan Agreement and Note, and exercise its full rights and remedies resulting from Hillcrest's liens on the Property.

## BASIS FOR RELIEF

11.  Section 362(d)(1) of the Bankruptcy Code provides that relief may be granted by "terminating, annulling, modifying, or conditioning" the automatic stay for cause, including the lack of adequate protection.  11 U.S.C. § 362(d)(1).  The stay may also be terminated with respect to property if the debtor does not have equity in the property and the property is not necessary to an effective reorganization.  *See* 11 U.S.C. § 362(d)(2).  In addition, the stay may be terminated as to single asset real estate if the debtor fails to file a plan of reorganization that has a reasonable probability of being confirmed within 90 days.  *See* 11 U.S.C. § 362(d)(3).  All three grounds for relief from the automatic stay are met in this case.

---

[1] BB Owen filed a Joint Plan with another debtor, MA BB Five, LP ("BB Five")(collectively, BB Owen and BB Five shall be referred to as the "Debtors").  The Debtors seek to form a master planned community with the property of both Debtors.  In addition to Hillcrests first priority lien on BB Owen's Property, Hillcrest has a properly perfected, second priority lien on BB Five's property.

### (a) Lack of Adequate Protection—§ 362(d)(1)

12. Hillcrest is not adequately protected because Hillcrest has no equity cushion and BB Owen stopped making payments to reduce the principal under the Loan Agreement. *See In re Fry Rd. Assoc.*, 66 B.R. 602, 605 (Bankr. W.D. Tex. 1986); *In re Kelly*, 2007 Bankr. LEXIS 4324, *3-4 (Bankr. S.D. Miss. 2007)(the debtor's failure to reduce the principal on the loan and the debtor's lack of equity in the property establishes a lack of adequate protection.). In addition, Hillcrest hired a certified appraiser to value to property, and as of May, 15, 2011, the Property's value is $22,350,000.00. *See* Appraisal, relevant portions of which are attached as Exhibit E. This suggests the value of the Property has declined because the appraised Property value is significantly less than the Property's value in the Debtor's schedules. The combination of no equity cushion and a decline in the Property's value demonstrates a lack of adequate protection. *See In re Fry*, 66 B.R. at 605.

13. Furthermore, BB Owen is currently receiving <u>no revenue</u> from the Property, and there is no prospect of generating revenue from the Property; therefore BB Owen has no assets to maintain the Property. Upon information and belief, BB Owen has failed to make timely payments for ad valorem property taxes in connection with the Property, which continues to affect the value and priority of Hillcrest's liens. Therefore, cause exists for lifting the stay under 11 U.S.C. § 362(d)(1). *See CMF Loudoun Ltd. P'ship v. Nattchase Assocs. Ltd. P'ship*, 178 B.R. 409, 416 (Bankr. E.D. Va. 1994)(the failure to pay real estate taxes establishes a lack of adequate protection).

### (b) Lack of Equity and Not Necessary for Effective Reorganization—§ 362(d)(2)

14. As noted above, the stay may also be terminated with respect to property if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. *See* 11 U.S.C. § 362(d)(2). A debtor has no equity in property for purposes of

Section 362(d)(2) when the debts secured by the liens on the property exceed the value of the property itself.  *See Sutton v. Bank One, Texas, N.A.*, 904 F.2d 327 (5th Cir. 1990).

15. Debtor's Schedule A makes it clear that BB Owen has no equity in the Property, as it calculates the amount of secured claims to be in excess of the current value of the Property (current listed value of $33,500,000.00 versus listed amount of secured claim of $36,535,238.91).[2]  In addition, as of May 15, 2011, the Property was valued at $22,350,000.00 by a certified appraiser.  *See* Exhibit E.  Therefore, the value of the Property is significantly less than the value listed on Debtor's Schedule A, and BB Owen has no equity in the Property. Having demonstrated that there is no equity in the Property, the burden is on BB Owen to prove that the Property is necessary for an effective reorganization.  *See* 11 U.S.C. § 362(g)(2); *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 576 (5th Cir. 1991).

16. The seminal case discussing the standard to be applied under § 362(d)(2)(B) is *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).  According to the Supreme Court, to demonstrate that property is necessary for an effective reorganization, the debtor must show that "the property is essential for an effective reorganization that is in prospect."  *Timbers,* 484 U.S. at 375-76.  "This means that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Timbers,* 484 U.S. at 376.

17. As set forth above, the Debtor bears the burden of proving that the Property is necessary for an effective reorganization.  *See* 11 U.S.C. § 362(g)(2); *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 576 (5th Cir. 1991).  Nevertheless, it is readily apparent that the Property is not necessary for an effective reorganization because there is no reasonable expectation of reorganization in this case.  Hillcrest has been in ongoing negotiations with the BB Owen since

long before the Petition Date, and BB Owen has been unable to present any viable plan of reorganization. BB Owen has recently proposed a Plan, but it is not feasible and has no chance of confirmation, as set forth in the following section.

18. Continuation of this case will only result in the incurrence of additional administrative expenses, which BB Owen currently has and will not have an ability to repay. Additionally, BB Owen's inability to pay other debts relating to the Property as they become due will further injure Hillcrest and the value and priority of its perfected liens against the Property. Accordingly, the Court should grant Hillcrest relief from the automatic stay to exercise its available legal remedies with respect to the Property, including but not limited to a non-judicial foreclosure sale.

### (c) No Plan With Reasonable Probability of Being Confirmed—362(d)(3)

19. Although BB Owen filed a Joint Plan of Reorganization, it does not have a reasonable probability of being confirmed within a reasonable time. Specifically, the proposed Plan filed by BB Owen is non-confirmable as a matter of law because it (i) violates section 524(e); (ii) violates the subordination agreement; (iii) violates the absolute priority rule; (iv) violates section 1129(a)(7)(ii); (v) unfairly discriminates in violation of section 1129(b)(1); (vi) is not fair and equitable in violation of section 1129(b)(2); and (vii) is not feasible.[3]

*The Plan Unfairly Discriminates and is Not Fair and Equitable*

1. The proposed Plan unfairly discriminates against Hillcrest and it is not fair and equitable, as required under section 1129(b). 11 U.S.C. § 1129(b). The proposed Plan does not provide for any dividend to Hillcrest's unsecured claim, if any, but it does provide a dividend to insider unsecured claims in the form of equity. *See* Plan at § 5.12. In addition, the interest rate

---

[2] *See* Schedule A [Docket No. 8].
[3] To the extent not otherwise provided herein, Hillcrest incorporates the arguments raised in its Objection to the Debtors' First Amended Joint Disclosure Statement regarding the non-confirmability of the proposed Plan.

**MOTION OF HILLCREST BANK FOR RELIEF FROM THE AUTOMATIC STAY – PAGE 7**

under the proposed Plan is not commercially reasonable, as it is excessively low considering current market standards. Specifically, the proposed Plan provides for 2.5% interest, plus an additional, once time 2.5% payment, paid at the end of the two-year term; however, the Property is non-operating, undeveloped real estate, and the proposed Plan suggests a start-up venture. *See* Plan, Article V, Section 5.05(a). There is a high amount of risk associated with the proposed Plan, and as such, a high risk interest rate is required. *See In re T-H New Orleans Ltd. P'ship*, 116 F.2d 790, 801 (5th Cir. 1997) (bankruptcy courts must make a factual determination in computing the appropriate interest rate for the specific risk level in their cases (citing *In re Briscoe Enter. Ltd., II*, 994 F.2d 1160 (5th Cir 1993))). Furthermore, the Plan does not provide for or taken into account any discounting back to present value of the interest to be paid at the end of the term. *Id.*

2. In addition, the proposed Plan provides for a 40-year amortization, which it tantamount to negative amortization of five percent, and a 10-year term, with a balloon payment, none of which is commercially reasonable. *See* Plan, Article V, Section 5.05(a). Courts commonly have reservations about negative amortization because it "tend[s] to be fraught with pitfalls that unfairly endanger creditors." *See Great Western Bank v. Sierra Woods Group*, 953 F.2d 1174, 1177 (9th Cir. 1992). Courts consider the following ten factors to determine whether negative amortization is fair and equitable: (1) does the plan offer a market rate of interest and present value of the deferred payments; (2) is the amount and length of deferral reasonable; (3) is the debt to value ratio satisfactory throughout the plan; (4) are the financial projections reasonable and sufficiently proven, or is the plan feasible; (5) is the collateral depreciating, stable, or appreciating; (6) are the risks unduly shifted to the creditor; (7) how many secured creditors bear the risk; (8) does the plan preclude foreclosure; (9) is negative amortization included in the original loan terms; and (10) are there adequate safeguards to protect the secured

creditor against plan failure. *See In re Apply Tree Partners, L.P.*, 131 B.R. 380, (Bankr. W.D. Tenn. 1991); *Great Western*, 953 F.2d at 1178. The Debtors' proposed Plan fails to satisfy any of these factors. Further, without something more than the Debtors' mere speculation that the real estate market may substantially improve, negative amortization paired with deferring substantially all repayment of principal over a forty year amortization is not fair and equitable. *See In re D&F Construction Inc.*, 865 F.2d 673, 676 (5th Cir. 1989) (negative amortization and a fifteen year delay in repayment of principal is "altogether impermissible speculation from the standpoint of [the secured creditor]"). The Plan's treatment of Hillcrest's secured claim is not fair and equitable, and the Plan cannot be confirmed.

3. The proposed Plan also requires that all payments to Hillcrest be applied only to the principal of the Indebtedness owed to Hillcrest. *See* Plan, Article V, Section 5.05(b). This is not commercially reasonable and should not be permitted, much less required. There is also a collateral release provision that does not comply with the Code and is ill-defined and unreasonable. Under this provision, the proposed Plan provides the land designated for certain Phases shall be released from any lien, but there is no consideration for this release. *See* Plan, Article V, Section 5.05(a). Liens cannot be released for no consideration. 11 U.S.C. § 1129(b)(2)(A). Further, the provision provides liens will be released for $12,500 per acre. *See* Plan, Article V, Section 5.05(a). However, the Debtors fail to provide any evidence that this is commercially reasonable, and as such, the proposed Plan cannot be confirmed under 1129(b).

### *The Plan Violates the Absolute Priority Rule*

4. The proposed Plan also violates the absolute priority rule, which prevents a junior class from receiving a distribution ahead of the unsecured creditor class. *See* 11 U.S.C. § 1129(b); *In re Pacific Lumber Co.*, 584 F.3d 229, 244 n.20 (5th Cir. 2009). BB Owen's proposed Plan allows existing equity holders to retain their equity without any evidence that the

Debtor looked to other alternatives or sought other investors. The debtor's pre-petition equity holders cannot contribute new capital and receive ownership interests in the reorganized debtor if that opportunity is only given to the pre-petition equity holders without consideration of alternatives. *See Bank of Am. Nat'l Trust & Savings Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 451 (1999). Similarly, the proposed Plan allows a junior class to receive a distribution ahead of Hillcrest. General unsecured creditors are paid in full on the effective date, while Hillcrest will not be paid in full until after the 10 year term. *See* Plan, Article V, Sections 5.05(a); 5.10. As a result, the proposed Plan violates the absolute priority rule and cannot be confirmed as a matter of law. *See* 11 U.S.C. § 1129(b)(2)(B).

*The Proposed Plan Violates a Subordination Agreement Between Hillcrest and Certain Lenders*

5. Subordination agreements are enforceable in a bankruptcy case to the same extent the agreement is enforceable under state law, and they are interpreted and enforced in accordance with general contract principals. *See Mem. Op. and Order Den. Mot. For Order Appointing Examiner Pursuant to 11 U.S.C. §1104 [DE #520]*, p.11, No. 09-37010-SGJ-11 (Bankr. N.D. Tex., March 5, 2010) (citing 11 U.S.C. § 510(a) and *In re Gen. Homes Corp., FGMC, INc.*, 34 B.R. 853, 864 (Bankr. S.D. Tex. 1991)). The Plan provides that new equity interests in the Debtors shall be restructured into member units of a new limited liability company which shall take title to the Debtors' assets. *See* Plan at § 5.12. More specifically, Parkwood Real Estate Partners, LLC ("Parkwood") is to receive 25.84% equity of the new company, and Tri-Properties Limited ("Tri-Properties") is to receive 6.46% of the new company. However, Hillcrest and Hillcrest and Prep BB Owen, LLC (upon information and belief an entity wholly-owned and operated by Parkwood Real Estate Partners, LLC) entered into various Subordination and Standstill Agreements (which was subsequently amended and restated), pursuant to which Prep BB Owen, LLC agreed that it would subordinate its rights in and to the collateral of the Debtors

and the proceeds thereof to Hillcrest. Additionally, in a separate Subordination and Standstill Agreement dated April 20, 2007, Tri-Properties agreed to subordinate its rights in and to the collateral of the Debtors to Hillcrest. Despite the express terms of the Subordination Agreements, the Plan attempts to provide Parkwood (via Prep BB Owen, LLC) and Tri-Properties with equity in consideration of the outstanding debt that is subject to the Subordination Agreements. Thus, the proposed Plan provides repayment consideration to subordinated creditors while BB Owen still has amounts outstanding to Hillcrest, which is in direct violation of the Subordination Agreements.

6. Further, Prep BB Owen, LLC and Tri-Properties, pursuant to the Subordination Agreements, each assigned and transferred their right to vote to accept or reject any plan in bankruptcy to, among others, Hillcrest. However, under the Plan, Class 6 consists of the Allowed Secured Claim of Parkwood and states that Class 6 is entitled to vote to accept or reject the Plan, but makes no mention of Parkwood's subordination to Hillcrest or any other senior lender. Moreover, Class 7 consists of the Allowed Secured Claim of Tri-Properties and states that Class 7 is entitled to vote to accept or reject the Plan, but makes no mention of Tri-Properties' subordination to Hillcrest or any other senior lender.

*The Plan Results in the Improper Substantive Consolidation of the Debtors*

7. The proposed Plan cannot be confirmed because it substantively consolidates the Debtors without following required procedures. The Bankruptcy Court may have the authority to order substantive consolidation under section 105(a). *See generally, In re Pacific Lumber Co.*, 584 F.3d 229, 249 (5th Cir. 2009) ("Substantive consolidation is an 'extreme and unusual remedy'" (citing *In re Gandy*, 299 F.3d 489, 499 (5th Cir. 2002)); *In re DRW Prop. Co.*, 54 B.R. 489, 4984 (Bankr. N.D. Tex. 1985) (stating that courts must use their equitable power to grant substantive consolidation sparingly because of the possibility of unfair treatment of creditors);

*but see In re Grupo Mexican de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999); J. Maxwell Tucker, *Grupo Mexicano and the Death of Substantive Consolidation*, 8 AM. BANKR. INST. L. REV. 427 (2000). Generally, debtors must move for substantive consolidation, and after notice and a hearing, the court enters an order. *See* L.B.R. 9007-1(h)(8). This process is important because "substantive consolidation affects substantive rights of the parties and therefore is subject to a heightened scrutiny." *In re Babcock and Wilcox Co.*, 250 F.3d 955, 959 (5th Cir. 2001). Here, however, the proposed Plan results in a *de facto* substantive consolidation of the Debtors without following the proper procedures or providing any justification for the consolidation or even mentioning the consolidation. *See generally, In re Pacific Lumber Co.*, 584 F.3d at 249 (citing *In re Babcock and Wilcox Co.*, 250 F.3d at 958 (characterizing de facto consolidation)). The Debtors are attempting to circumvent the requirements under the Bankruptcy Code and prevent Creditors from having notice and hearing regarding substantive consolidation. Therefore, the Debtors' proposed Plan cannot be confirmed as a matter of law.

*The Plan Artificially Impairs Classes to Manipulate the Vote*

8. Under the Plan, there is only artificial impairment of the unsecured class and, as such, the classification is improper and violates section 1122. *See* 11 U.S.C. §1122(b). A class may not be created in order to "manipulate the outcome of the vote on a plan, rather than simply to enhance administration of the plan." *See In re Greystone III Joint Venture*, 995 F.2d 1274, 1278 n.4 (5th Cir. 1991). A class cannot be created to "mask the intent to gerrymander the voting process," and if it was then the classification scheme cannot be approved. *Id.* at 1279. The Debtors allege the Class 10 Claims are impaired because they will be paid 60 days from the date of confirmation of the Plan. However, they are only technically impaired because of the 60 day delay. The Debtors provide no rationale for why the claims cannot be paid earlier. Instead,

the Debtors are artificially impairing the Class 10 Claims in order to manipulate the vote on the Debtors propose Plan.

9. Moreover, the Debtors created a technical impairment for the general unsecured claims in an attempt to avoid violating the absolute priority rule. The Disclosure Statement emphasizes the fact that, so long as all the unsecured creditors vote for the Plan, there will be no violation of the absolute priority rule; however, if the unsecured creditors do not vote for the Plan, the Plan will have violated the absolute priority rule. *See* Disclosure Statement, Section 1.20. The Debtors created an artificial impairment by delaying payment of the Class 10 Claim by 60 days, even though all of the Class 10 Claims will be paid in full. The general unsecured creditors' impairment was created solely to manipulate the voting process and avoid violation of the absolute priority rule; therefore, the classification scheme and the proposed Plan cannot be confirmed.

*Improper Classification and Unfair Discrimination*

10. Debtors' classifications under the Plan appear to be created for gerrymandering. *In re Greystone III Joint Venture*, 995 F.2d 1274, 1276 (5th Cir. 1991) (debtors cannot place claims into separate classes to gerrymander the vote). Hillcrest's unsecured deficiency claim must be classified and treated the same as other unsecured creditors—paid in full on the Effective Date. Giving effect to the Subordination Agreements referenced above, and with proper classification to Debtors, will lack an impaired accepting class. This must be determined in a debtor by debtor basis without grouping creditors in both estates into single classes, and without giving effect to artificial impairment of claims.

*The Plan is Not Feasible*

11. The Debtors proposed Plan cannot be confirmed because it is not feasible. Bankruptcy Courts must "scrutinize carefully the plan to determine whether it offers a reasonable

prospect of success and is workable." *In re Beyond.com Corp.*, 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003). In this case, the Debtor has failed to offer anything other than hope and speculation regarding its ability to satisfy the obligations of creditors. *See, e.g., In re M&S Assocs., Ltd.*, 138 B.R. 845, 852 (Bankr. W.D. Tex. 1992) ("Confirmation of the Plan would merely allow the Debtor to postpone the inevitable, and to gamble, with the [secured creditor's] money, on the long shot possibility of a drastic improvement in the real estate market."); *In re Pelham St. Assocs.*, 134 B.R. 700, 701 (Bankr. D.R.I. 1991) (denying confirmation of plan predicated on a 5-year balloon payment to the secured creditor, concluding that the plan was "pure pie in the sky, and no secured creditor should be required to depend on such illusory pie.").

12. Neither the Disclosure Statement nor the Plan provides any concrete explanation for how creditors in these cases will receive the value of their claims. BB Owen has no equity in the Property, and this is a Single Asset Real Estate bankruptcy. More specifically, this case involves more than 1100 acres of raw/undeveloped land located in McKinney, Texas that the Debtors purchased in 2006 and plan to develop into a master-planned community for single-family housing, a segment of the economy that is notoriously struggling. *See* Disclosure Statement at p. 11.

13. The only support for the Plan's success is contained in Exhibit C of the Disclosure Statement, which is the bankruptcy case proforma. However, BB Owen already values the Property higher than it is worth according to a certified appraiser, and similarly, BB Owen's projections are much higher than they will be in actuality. Speculative and unrealistic projections are not sufficient to prove the feasibility of a plan of reorganization. *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 579 (5th Cir. 1991). The proposed Plan relies on revenues generated from the BB Owen's property (which, to date, amount to zero) and additional financing. "Section 1129(a)(11) requires the plan proponent to show concrete evidence of a

sufficient cash flow to fund and maintain both its operations and obligations under the plan." *See In re 8315 Fourth Ave. Corp.*, 172 B.R. 725, 735 (Bankr. E.D.N.Y. 1994*); In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993). Plans often fail on feasibility grounds where the assets needed to fund the Plan are speculative. *See In re 8315 Fourth Ave. Corp.*, 172 B.R. at 735; *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506-09 (Bankr. S.D. Tex. 1989).

14. Further, where a plan relies on operating revenues, "a debtor's past and present financial history are probative of the plan's feasibility." *Id.* The Debtors intend to construct their expansive, master-planned, single-family housing community at a time when "[s]ingle-family homebuilding in the [Dallas] area remains at the lowest level in generations . . ." and when "Dallas-area home prices fell 4 percent from a year earlier . . .." *See* Steve Brown, *Dallas area tops nation in construction employment growth*, DALLAS MORNING NEWS, June 28, 2011; *see also* Steve Brown, *Dallas-area home prices down 4 percent from a year earlier*, DALLAS MORNING NEWS, June 28, 2011. Considering the Debtors' prior inadequate performance in regards to developing the property (BB Owen has owned the Property since 2006, yet no development has taken place), the current state of the new home market and the conjectural and speculative projections in support of the Debtors' proposed Plan, the Plan is not feasible and cannot be confirmed as a matter of law.

*The Plan Improperly Releases Non-Debtor Third Parties*

15. First, the proposed Plan cannot be confirmed as a matter of law because it violates section 524(e). The proposed Plan requires Hillcrest to non-suit any claims or actions against guarantors, which constitutes an improper release of third parties. *See* Plan, Article V, Section 5.05(g); 11 U.S.C. § 524(e). The proposed Plan also has a permanent injunction provisions that prevents creditors from bringing "any Claims against . . . the Released Entities and any other entity against whom prosecution…could result in a Claim being asserted against the Debtors…."

*See* Plan, Article IX, Section 9.04. The Released Entities are defined as "officers, financial advisors, attorneys, or employees of the Debtor." *See* Plan, Article IX, Section 9.02. A discharge in bankruptcy does not affect the liability of any other entity on such debt, including the liability of a guarantor. *See* 11 U.S.C. § 524(e); *see also In re Pacific Lumber Co.*, 584 F.3d at 249; *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) (holding that bankruptcy courts do not have authority to enjoin third party claims); *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346, 1351 (5th Cir. 1989); *Citizens Bank & Trust v. Case (In re Case)*, 937 F.2d 1014, 1025 (5th Cir. 1991) (holding that the bankruptcy court can only determine dischargeability of debts owed by the debtor). Here, the release and injunction provisions seek to release non-debtor insiders from their liability on their debts, in direct violation of section 524(e). The release and permanent injunction under the proposed Plan do not comply with the requirements under the Bankruptcy Code, and as such, the proposed Plan cannot be confirmed as a matter of law. *See* 11 U.S.C. § 1129(a)(1).

### *The Plan Does Provide Creditors More than a Chapter 7 Liquidation*

20. The proposed Plan violates section 1129(a) because Hillcrest will receive less under the proposed Plan than it would if the Debtors were liquidated under Chapter 7. *See* 11 U.S.C. § 1129(a)(7)(ii). Under Chapter 7, the Property would be liquidated and the assets distributed. Hillcrest would receive payment on its secured claim immediately. Under the proposed Plan, it will take at least 10 years before Hillcrest is paid in full, if ever. In addition, the Debtors acknowledge the high risk associated with their proposed start-up venture. Thus, it is unclear, and Debtors fail to provide any explanation, as to what amount Hillcrest may actually receive as a result of the Plan. A Plan cannot be confirmed if an impaired creditor will not

receive more than it would receive if the debtor were liquidated under Chapter 7. *See* 11 U.S.C. § 1129(a)(7)(ii).

**(d)     Bad Faith**

21.     The Court should grant Hillcrest relief from the automatic stay because the BB Owen filed its Petition and Plan in bad faith. The good faith standard prevents abuse of the bankruptcy process and protects the jurisdictional integrity of the bankruptcy courts. *See In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). Lack of good faith constitutes "cause" for lifting the automatic stay to permit foreclosure. *Id.*; *see also*, *In re Humble Place Joint Venture*, 936 F.2d 814, 816 (5th Cir. 1991)(Under the Bankruptcy Code, "for cause" has been interpreted to include the lack of good faith). The factors that establish bad faith include several, but not all, of the following: (i) the debtor has one asset, usually a tract of real property; (ii) the asset is encumbered by secured creditors' liens, (iii) there are generally no employees except principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization; (iv) there are few, if any, unsecured creditors; (v) and the property has been posted for foreclosure. *In re Little Creek*, 779 F.2d at 1073.

22.     The circumstances here clearly meet all of the factors establishing bad faith. BB Owen has a single asset real estate, which is encumbered by secured creditors liens and BB Owen has no equity in the Property. The Property was posted for foreclosure and BB Owen filed for bankruptcy on the eve of the foreclosure sale. There are no employees to protect; in fact, the only employees are insiders and BB Owen's Plan allows for those insiders to remain in control of the reorganized Debtor. There is no cash flow, as the Property is an undeveloped tract of real estate, and there is no available source of income for reorganization besides additional financing. Bankruptcy is not proper in this case because there is "no going concern to protect, there are no employees to protect, and there is no hope of rehabilitation, accept according to the debtor's

'terminal euphoria.'" *In re Little Creek*, 779 F.2d at 1073. Therefore, the Court should grant Hillcrest relief from the automatic stay to exercise its available legal remedies with respect to the Property, including but not limited to a non-judicial foreclosure sale.

## CONCLUSION

WHEREFORE, based on the foregoing, Hillcrest Bank respectfully requests this Court enter an order granting it relief from the automatic stay to pursue whatever remedies are available to it with respect to the Property, including but not limited to posting and conducting a non-judicial foreclosure sale of the Property. Hillcrest Bank also requests any such other and further relief, at law or in equity, to which it may be justly entitled.

Dated: July 6, 2011.

Respectfully submitted,

BRACEWELL & GIULIANI LLP

By: */s/ Brian C. Mitchell*
    Samuel M. Stricklin
    State Bar No. 19397050
    Michael L. Dinnin
    State Bar No. 05888100
    Brian C. Mitchell
    State Bar No. 24046452
    1445 Ross Avenue Suite 3800
    Dallas, TX 75202-2711
    Telephone: (214) 468-3800
    Facsimile: (214) 468-3888

**ATTORNEYS FOR HILLCREST BANK, N.A.**

## CERTIFICATE OF CONFERENCE

Counsel for Hillcrest attempted to contact counsel for BB Owen regarding whether BB Owen was opposed to this Motion. Counsel for Hillcrest has not yet received a response from counsel for BB Owen, so Hillcrest assumes that BB Owen is opposed to the requested relief in the Motion.

*/s/ Brian C. Mitchell*
Brian C. Mitchell

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2011, a true and correct copy of the above and foregoing instrument, including exhibits, has been served via U.S. Mail and the Court's ECF noticing system on the debtor, the United States Trustee, and all parties who have filed a notice of appearance or request for notice in the case,. Due to the voluminous nature of the exhibits attached to this Motion, all secured creditors, all governmental units, the twenty (20) largest unsecured creditors, as listed in the noticing matrix and pursuant to L.B.R. 9013(f), have been served with a copy of this Motion without exhibits. Exhibits are available upon request from Hillcrest's counsel.

*/s/ Brian C. Mitchell*
Brian C. Mitchell
#3802320.3