**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **MA- BBO FIVE, LP** | § | **CASE NO. 11-40644** |
| | § | |
| **MA BB OWEN, LP** | § | **CASE NO.  11-40645** |
| | § | **Chapter 11** |
| | § | |
| | § | |
| **DEBTORS.** | § | |

**SECOND AMENDED JOINT PLAN OF REORGANIZATION**
**DATED  JULY 12, 2011**

MA-BBO Five, LP and MA BB Owen, LP, the Debtors propose the following Second Amended Joint Plan of Reorganization Dated July 12, 2011 ("Plan") , pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtors.  The Debtors' ability to fund this Plan is based on moneys it will raise from investments.  The Debtors shall file periodic financial reports with the Court as required by the Code covering the Debtors' profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txnb.uscourts.gov using the Debtors' name and/or case number as referenced above.

# TABLE OF CONTENTS

ARTICLE I.  DEFINITIONS AND USE OF TERMS ...................................................................................3

ARTICLE II.  CONCEPT OF THE PLAN ...............................................................................................6

ARTICLE III.  GENERAL TERMS AND CONDITIONS.........................................................................7

ARTICLE IV.  DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ....................................7

ARTICLE V.  PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS............................9

ARTICLE VI.  MEANS FOR IMPLEMENTATION OF PLAN...............................................................16

ARTICLE VII.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .........16

ARTICLE VIII.  ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS ......................17

ARTICLE IX.  EFFECT OF CONFIRMATION ....................................................................................18

ARTICLE X.  MISCELLANEOUS PROVISIONS ................................................................................19

ARTICLE XI.  MODIFICATION OF THE PLAN..................................................................................20

ARTICLE XII.  RETENTION OF JURISDICTION................................................................................20

# ARTICLE I.

## DEFINITIONS AND USE OF TERMS

    **1.01**    **Defined Terms**.  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

    **1.01.01**    **Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtors and Debtors' property under 28 U.S.C. Section 1930.

    **1.01.02**    **Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

    **1.01.03**    **Allowed Claim** means a Claim against the Debtors allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

    **1.01.04**    **Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

    **1.01.05**    **Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

    **1.01.06**    **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtors pursuant to Chapter 11 of the Bankruptcy Code.

    **1.01.07**    **Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

    **1.01.08**    **Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

    **1.01.09**    **Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

    **1.01.10**    **Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

    **1.01.11**    **Claimant** means any person or entity having or asserting a Claim in the case.

**1.01.12** **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtors have designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13** **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14** **Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.15** **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**1.01.16** **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17** **Contested** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18** **Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.19** **Debtors** means MA BB Owen, LP and MA-BBO Five, LP.

**1.01.20** **Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.21** **Effective Date** means sixty days after the Confirmation Date.

**1.01.22** **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.01.23** **New Capital Partner** means a third party that the Debtor has selected that has agreed to make the Equity Investment called for by the Plan (as described in more detail in the related Disclosure Statement).

**1.01.24** **Equity Investment** means$4,000,000.00 to be invested by the New Capital Partner in exchange for 60% the Reorganized Debtors' and/or Newco's equity interests plus any return paid on investment to the extent structured as debt rather than equity behind the debts of the primary secured creditors – Heritage and Hillcrest. The primary funding for the Plan will come from the New Capital Partner.

**1.01.25** **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

**1.01.26** **Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.27** **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**1.01.28** **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.29** **Impaired** means the treatment of an Allowed Claim pursuant to the Plan <u>unless</u>, with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.30** **Petition Date** means February 28, 2011 the date the Debtors' petitions were filed commencing this bankruptcy case.

**1.01.31** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.01.32** **Pre-petition** means prior to the Petition Date.

**1.01.33** **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.01.34** **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.35** **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541. The Debtor shall remain in possession of all property of the estate unless provided for otherwise in the Plan or Confirmation Order.

**1.01.36** **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.37** **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.38** **Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

**1.01.39** **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

**1.01.40** **Unimpaired** means not Impaired.

**1.01.41** **Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

**1.01.42** **Unsecured Claimants** or **Unsecured Creditors** means any holder of an Unsecured Claim.

**1.01.43** **Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02** **Number and Gender of Words**. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03** **Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04** **Headings**. The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05** **Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II.

## CONCEPT OF THE PLAN

**2.01** **Generally**. The Plan is a plan of reorganization. The Debtors shall continue their businesses after the Confirmation Date. The revenue from the Debtors' future business operations and the Equity Investment put in by the New Capital Partner will provide the income and means for implementation of the Plan. Projections "Proforma" to support this Plan are attached to the Disclosure Statement as exhibits "C" and "D". The actual extensive detail for the Debtors' future plans is set forth in more detail in the related Disclosure Statement.

# ARTICLE III.

## GENERAL TERMS AND CONDITIONS

**3.01     Treatment of Claims**.  This Plan is intended to resolve all Claims against the Debtors and/or property of the Debtors of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.  The Debtors' proposal under the Plan is to pay creditors with Allowed Claims in full through the treatments afforded such claims under this Plan.

**3.02     Time for Filing Claims**.  The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date.  At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

**3.03**     Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date except Debtor's counsel. A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer. Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtors.

**3.04     Modification to the Plan**.  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtors, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party.  The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtors consent thereto in writing.

# ARTICLE IV.

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtors designate the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123. The Debtors shall pay all fees assessed by the Office of the

United States Trustee until this Case is closed by the Court or the Debtors are otherwise released from such obligations by the Court.

4.01 **Class 1** consists of any Allowed Administrative Claims of MA-BBO FIVE, LP.

4.02 **Class 1A** consists of any Allowed Administrative Claims of MA BB OWEN, LP.

4.03 **Class 2** consists of any Allowed Secured Tax Creditor Claims of MA-BBO FIVE, LP.

4.04 **Class 2A** consists of any Allowed Secured Tax Creditor Claims of MA BB OWEN, LP.

4.05 **Class 3** consists of any Allowed Priority Creditor Claims of MA-BBO FIVE, LP.

4.06 **Class 3A** consists of any Allowed Priority Creditor Claims of MA BB OWEN, LP.

4.07 **Class 4** consists of Allowed Secured Claim of Heritage Land Bank, ACA ("Heritage") in the MA-BBO FIVE, LP case.

4.08 **Class 5** consists of Allowed Secured Claim of Hillcrest Bank ("Hillcrest") in the MA-BBO FIVE, LP case.

4.09 **Class 5A** consists of Allowed Secured Claim of Hillcrest Bank ("Hillcrest") in the MA BB OWEN, LP case.

4.10 **Class 6** consists of Allowed Secured Claim of Parkwood Real Estate Partners, LLC ("Parkwood") in the MA-BBO FIVE, LP case.

4.11 **Class 6A** consists of Allowed Secured Claim of Parkwood Real Estate Partners, LLC ("Parkwood") in the MA BB OWEN, LP case.

4.12 **Class 7** consists of Allowed Secured Claim of Tri-Properties, Ltd. ("Tri-Properties") in the MA-BBO FIVE, LP case.

4.13 **Class 7A** consists of Allowed Secured Claim of Tri-Properties, Ltd. ("Tri-Properties") in the MA BB OWEN, LP case.

4.14 **Class 8** consists of Allowed Claim of BB Owen Properties, L.P. ("BB Owen").

4.15 **Class 9** consists of Allowed Claim of Marlin Atlantis White, Ltd. ("MAW").

4.16 **Class 10** consists of the Allowed General Unsecured Non-Insider Claims in the MA-BBO FIVE, LP case.

4.17 **Class 10A** consists of the Allowed General Unsecured Non-Insider Claims in the MA BB OWEN, LP case.

**4.18**     **Class 11** consists of the Allowed General Unsecured Insider Claims in the MA-BBO FIVE, LP case.

**4.19**     **Class 11A** consists of the Allowed General Unsecured Insider Claims in the MA BB OWEN, LP case.

**4.20**     **Class 12** consists of the Equity Holders in the Debtors.

## ARTICLE V.

## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**5.01**     **Class 1 Claims**.  The Class 1 Claims will be paid in full by the Debtors the later of the Effective Date or within ten days of becoming an Allowed Claim. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtors' attorney's fees and U.S. Trustee's fees.  U.S. Trustee's fees must continue to be paid until the case is closed.  The Debtors must file quarterly reports following confirmation and until the case is closed.  The Class 1 Claims may agree to a different treatment.

**5.02**     **Class 1A Claims**.  The Class 1A Claims will be paid in full by the Debtors the later of the Effective Date or within ten days of becoming an Allowed Claim. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtors' attorney's fees and U.S. Trustee's fees.  U.S. Trustee's fees must continue to be paid until the case is closed.  The Debtors must file quarterly reports following confirmation and until the case is closed.  The Class 1A Claims may agree to a different treatment.

**5.03**     **Class 2 Claims**.  The Allowed Claims under Class 2 shall be paid in full 30 days following the Effective Date.  Ad valorem real property taxes for 2011 will be paid when due. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan. From and after the Effective Date such claims shall be payable with interest at the rate of 12% per annum. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtors dispute such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed.  While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed.  In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor.  Such default shall be cured within 15 business days of the date of transmission of such notice of default.  In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court.  The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice.  Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.  These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan.

Sections 8.02 and 10.07 of the Plan shall not apply to this Class of Secured Claims. The taxes may be paid sooner if there is a sale or refinance of the property securing such claims. Taxes for the current year shall be escrowed with Wells Fargo in the tax escrow account on a monthly basis starting on the Effective Date and shall be paid along with the mortgage payment at the rate of 1/12 per month.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**5.04** **Class 2A Claims**. The Allowed Claims under Class 2A shall be paid in full 30 days following the Effective Date. Ad valorem real property taxes for 2011 will be paid when due. The Class 2A Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan. From and after the Effective Date such claims shall be payable with interest at the rate of 12% per annum. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtors dispute such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default. These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. Sections 8.02 and 10.07 of the Plan shall not apply to this Class of Secured Claims. The taxes may be paid sooner if there is a sale or refinance of the property securing such claims. Taxes for the current year shall be escrowed with Wells Fargo in the tax escrow account on a monthly basis starting on the Effective Date and shall be paid along with the mortgage payment at the rate of 1/12 per month.

The following ad valorem taxes are owed on the properties:

See the Disclosure Statement Exhibit "J" which indicates the tax through May 2011 for the MA BBO Owen and MA BBO Five Properties.

The Class 2A Claims are Impaired and the holders of the Class 2A Claims are entitled to vote to accept or reject the Plan.

**5.05** **Class 3 Claims**. The Class 3 Claims will be paid once Allowed over five (5) years with interest on such amounts at the rate of 4.5% per annum until paid in full. The payments shall be made in equal monthly payments commencing on the first day of the month

following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

**5.06** **Class 3A Claims**. The Class 3A Claims will be paid once Allowed over five (5) years with interest on such amounts at the rate of 4.5% per annum until paid in full. The payments shall be made in equal monthly payments commencing on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

The Class 3A Claims are Impaired and the holders of the Class 3A Claims are entitled to vote to accept or reject the Plan.

**5.07** **Class 4 Claim**. The Class 4 Claim will be paid, at the Debtors' option, as follows:

a. The Allowed Secured Claim of Heritage, which the Debtor asserts is approximately $11,700,000.00 (without late fees) but shall include interest at the contract rate and reasonable attorney's fees, shall be amortized over a period of forty (40) years with interest on such amount at a rate of 2.5% with an additional 2.5% interest paid at maturity. For example: if during the term of the note, $4 million dollars has been paid in interest, then another $4 million dollars will be paid when the loan is paid off. The payments shall be made in equal monthly payments commencing on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter for 120 months following the Effective Date, at which the full unpaid principal balance and accrued unpaid interest shall be paid in full ("Balloon Payment"). The Debtor shall deposit one year's principal and interest into an Interest Reserve Account at a third party bank to cover the payments called for by the Plan for the 12 months following the Confirmation Date. All future will be released for the payment of $12,500 per acre paid to the Bank.

b. All payments made to Heritage during the pendency of this Case shall be applied to the principal portion of the Allowed Claim amount.

c. Debtor shall meet all financial reporting requirements provided by the current loan documents; *provided, however*, the Debtor's loan with Heritage will not be callable or put in default as a result of the financial condition of any guarantor of the Debtor's obligations to Heritage.

d. To the extent that a portion of Heritage's claim is unsecured, then such claim shall be treated in Class 9 of the Plan.

e. Payments shall be due on the first day of the month following the Effective Date as defined in the Plan and shall continue on the first day of each month thereafter until paid in full as set forth in paragraph a. above.

f.     The security interest and liens granted to Heritage under the pre-Petition Date loan documents shall constitute valid and duly perfected security interests and liens. Heritage shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If Heritage shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtor is authorized and required to, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon Heritage's request. Heritage may, in its discretion, file a copy of either the Order Confirming Plan or the Plan in any filing or recording office in any jurisdiction in which the Debtor may have an interest in property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of either the Order Confirming Plan or the Plan in accordance with applicable law.

g.     Confirmation of the Plan shall be deemed to have cured all pre-confirmation defaults under the Debtor's pre-Petition Date loan documents with Heritage. The terms of the Heritage pre-Petition Date loan documents are not modified by the Plan or Confirmation Order unless specifically stated in the Plan or confirmation order. Accordingly, the Heritage pre-Petition Date loan documents are enforceable against the Debtor except as specifically stated herein. In the event of a default by Debtor in its obligations to Heritage under the Plan which is not timely cured within the notice period, Heritage's rights under the pre-Petition loan documents shall be fully enforceable. If requested by Heritage, Debtor shall execute all necessary loan and related documents with the terms stated in this Plan. Any default in payment shall require a ten day written notice of default and opportunity to cure.

h.     Should this Section of the Plan for treatment of Heritage's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

i.     The Class 4 Claim is Impaired and the holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

**5.08     Class 5 Claim**. The Class 5 Claim will be paid, at the Debtors' option, as follows:

a.     The Allowed Secured Claim of Hillcrest, which the Debtor asserts is approximately $17,477,000.00(without late fees) but shall include interest at the contract rate and reasonable attorney's fees, shall be amortized over a period of forty (40) years with interest on such amount at a rate of 2.5% with an additional 2.5% interest paid at maturity. For example: if during the term of the note, $4 million dollars has been paid in interest, then another $4 million dollars will be paid when the loan is paid off. The payments shall be made in equal monthly payments commencing on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter for 120 months following the Effective Date, at which

the full unpaid principal balance and accrued unpaid interest shall be paid in full ("Balloon Payment"). The Debtor shall deposit one year's principal and interest into an Interest Reserve Account at a third party bank to cover the payments called for by the Plan for the 12 months following the Confirmation Date. All phases will be released for the payment of $12,500 per acre paid to the Bank.

b.    All payments made to Hillcrest during the pendency of this Case shall be applied to the principal portion of the Allowed Claim amount.

c.    Debtor shall meet all financial reporting requirements provided by the current loan documents; *provided, however*, the Debtor's loan with Hillcrest will not be callable or put in default as a result of the financial condition of any guarantor of the Debtor's obligations to Hillcrest.

d.    To the extent that a portion of Hillcrest's claim is unsecured, then such claim shall be treated in Class 9 of the Plan.

e.    Payments shall be due on the first day of the month following the Effective Date as defined in the Plan and shall continue on the first day of each month thereafter until paid in full as set forth in paragraph a. above.

f.    The security interest and liens granted to Hillcrest under the pre-Petition Date loan documents shall constitute valid and duly perfected security interests and liens. Hillcrest shall not be required to file, record or serve any financing statements, mortgages, notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens. If Hillcrest shall, in its discretion, elect for any reason to file any such financing statements, mortgages, notices or other documents with respect to such security interests and liens, or take any other action to evidence or perfect same, the Debtor is authorized and required to, or cause to be executed, all such financing statements, deeds of trust, notices or other documents upon Hillcrest's request. Hillcrest may, in its discretion, file a copy of either the Order Confirming Plan or the Plan in any filing or recording office in any jurisdiction in which the Debtor may have an interest in property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of either the Order Confirming Plan or the Plan in accordance with applicable law.

g.    Confirmation of the Plan shall be deemed to have cured all pre-confirmation defaults under the Debtor's pre-Petition Date loan documents with Hillcrest. The terms of the Hillcrest pre-Petition Date loan documents are not modified by the Plan or Confirmation Order unless specifically stated in the Plan or confirmation order. Accordingly, the Hillcrest pre-Petition Date loan documents are enforceable against the Debtor except as specifically stated herein. In the event of a default by Debtor in its obligations to Hillcrest under the Plan which is not timely cured within the notice period, Hillcrest's rights under the pre-Petition loan documents shall be fully enforceable. If requested by Hillcrest, Debtor shall execute all necessary loan and

related documents with the terms stated in this Plan. Any default in payment shall require a ten day written notice of default and opportunity to cure.

h.     Should this Section of the Plan for treatment of Hillcrest's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

i.     The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**5.09    Class 5A Claim**.  The Class 5A Claim will be treated as set forth above for the Class 5 Claim.

**5.10  Class 6 Claim**.  The Class 6 Claim will receive no payment under this Plan. Its Allowed Claim shall be converted to equity in the Reorganized Debtor as provided in Section 5.12 below.

The Class 6 Claim is Impaired and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

**5.11  Class 6A Claim**.  The Class 6A Claim will receive no payment under this Plan. Its Allowed Claim shall be converted to equity in the Reorganized Debtor as provided in Section 5.12 below.

The Class 6A Claim is Impaired and the holder of the Class 6A Claim is entitled to vote to accept or reject the Plan.

**5.12  Class 7 Claims**.  The Class 7 Claim will receive no payment under this Plan. Its Allowed Claim shall be converted to equity in the Reorganized Debtor as provided in Section 5.12 below.

The Class 7 Claim is Impaired and the holder of the Class 7 Claim is entitled to vote to accept or reject the Plan.

**5.13  Class 7A Claims**.  The Class 7A Claim will receive no payment under this Plan. Its Allowed Claim shall be converted to equity in the Reorganized Debtor as provided in Section 5.12 below.

The Class 7A Claim is Impaired and the holder of the Class 7A Claim is entitled to vote to accept or reject the Plan

**5.14  Class 8 Claim**.  The Class 8 Claim will receive no payment under this Plan. Its Allowed Claim shall be converted to equity in the Reorganized Debtor as provided in Section 5.12  below.

The Class 8 Claim is Impaired and the holder of the Class 8 Claim is entitled to vote to accept or reject the Plan.

**5.15** **Class** **9** **Claim**.  The Class 9 Claim will receive no payment under this Plan. Its Allowed Claim shall be converted to equity in the Reorganized Debtor as provided in Section 5.12 below.

The Class 9 Claim is Impaired and the holder of the Class 9 Claim is entitled to vote to accept or reject the Plan.

**5.16** **Class** **10** **Claims.**  The Class 10 Claims will be paid as follows:  In full on the Effective Date.

The Class 10 Claims are Impaired and the holder of the Class 10 Claims are entitled to vote to accept or reject the Plan.

**5.17** **Class** **10A** **Claims.**  The Class 10A Claims will be paid as follows:  In full on the Effective Date.

The Class 10A Claims are Impaired and the holder of the Class 10A Claims are entitled to vote to accept or reject the Plan.

**5.18** **Class 11 Claims**.  The Class 11 Claims will receive no payment under this Plan.

The Class 11 Claims are Impaired and the holder of the Class 11 Claims are entitled to vote to accept or reject the Plan.

**5.19** **Class 11A Claims**.  The Class 11A Claims will receive no payment under this Plan.

The Class 11A Claims are Impaired and the holder of the Class 11a Claims are entitled to vote to accept or reject the Plan.

**5.20** **Class 12 Equity Interest Holders in the Debtors**.  The equity interests in the Reorganized Debtors shall be cancelled on Confirmation. The new equity interests in the Debtors shall be restructured into member units in a new limited liability company ("Newco") which shall take title to the Debtors' assets subject to the liens, claims and encumbrances already existing against the Properties. Newco shall be owned as follows:

(a) Parkwood Real Estate Partners, LLC shall hold 25.84% of  Newco's member units in exchange for its release of the secured note;

(b)  Tri-Properties Limited shall hold 6.46% of  Newco's member units in exchange for its release of its secured note;

(c) Marlin Atlantis White, Ltd. shall hold 5.7% of  Newco's member units in exchange for its release of its secured note for their future work in managing the project;

(d)  BB Owen Properties, LP shall hold 2% of  Newco's member units in exchange for its release of its unfunded Sellers' note;

(e)  The New Capital Partner shall hold 60% of Newco's member units in exchange for such equity investment.

The Equity Interest Holders are Impaired under the Plan.


There are no unsecured claims proposed for Classes 4 and 5 so there is no absolute priority rule issue in this Plan.

 The administrative claims include the following:  UST fees $2,100.00 and legal fees for Debtors' counsel $25,000.00.

The claimants in classes 2 and 3 are described as follows:  Class 2 would be real property taxes owed on the property. Class 3 is priority creditor claims which there should be none.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan**.    This Plan will be implemented, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above.  This Plan relies on the revenues generated from the Debtor's property and the Equity Investment.  Debtors request confirmation of the Plan under the provision of Section 1129 of the Code, which permits cram down of the Plan.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01    Rejection of Executory Contracts and Unexpired Leases.**  Debtors shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), all unexpired leases of real property and executory contracts not specifically assumed or rejected prior to the Confirmation Date. Including without limitation:

Debtor MA-BBO Five, LP and Debtor MA BB Owen, LP shall assume, as of the Confirmation Date, the Development Agreement entered into by the Debtor MA-BBO Five, LP, Debtor MA BB Owen, LP, and the City of McKinney in December 2006.

 Debtor MA BB Owen, LP shall assume, as of the Confirmation Date, the Park Development and Disbursement Agreement, entered into by Debtor MA BB Owen, LP and the City of McKinney on or about April 3, 2007.

**7.02    Reservation of Rights**. The Debtors shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03** __Bar__ __Date__ __for__ __Claims__ __Based__ __on__ __Rejection__.  If the rejection of an executory contract or an unexpired lease by the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtors that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtors of any objections to such Claim if asserted.

<h1 style="text-align:center">ARTICLE VIII.</h1>

<h2 style="text-align:center">ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS</h2>

**8.01** __The Debtors' Causes of Action__.  Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtors or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the Creditors subsequent to the Effective Date.  Such claims may be identified in more detail in the accompanying Disclosure Statement and on the Schedules filed in these cases.  Debtors are still investigating claims it may hold against Hillcrest and any other creditors of this estate. Some causes of action and claims against Hillcrest have been indentified in the Schedules.

**8.02** __Objections to Claims__.  Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtors may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.  Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim.  If a Claim is disputed in whole or in part because the Debtors assert a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or

recoupment, less the amount of its Allowed Claim.  In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX.

## EFFECT OF CONFIRMATION

**9.01**   **Discharge and Release of Debtors**.   Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtors since it is a plan of reorganization.

**9.02**   **Released Entities**.   None of the officers, financial advisors, attorneys, or employees of the Debtor (collectively the "Released Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan. The Released Entities shall not include the guarantors on any of the claims in this bankruptcy case.

**9.03**   **Legal Binding Effect**.  The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.04**   **Permanent Injunction**.  Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtors, the Released Entities and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtors that could arise directly or indirectly out of a Claim against the Debtors that is addressed by this Plan.  This Plan shall not release the claims against the guarantors or provide for an injunction or stay preventing Hillcrest from pursuing its contractual and/or legal rights and remedies against the guarantors.

From and after the Confirmation Date, all holders of Claims arising pre-Confirmation against the Debtors are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtors, their Assets, or against its financial advisors or attorneys; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtors or against its financial advisors or attorneys; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtors or against its financial advisors or attorneys; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce his rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.  Such restraint shall continue until the Debtors have been granted a discharge by the Court or such creditor is paid in full as called for by the Plan.

**Nothing herein is intended to violate any provision of the Bankruptcy Code as it relates to the release of third parties unless such release is specifically contemplated by the Plan itself.**

## ARTICLE X.

## MISCELLANEOUS PROVISIONS

**10.01  Request for Relief Under Bankruptcy Code Section 1129**.  In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Debtors reserve the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02  Revocation**.  The Debtors reserve the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03  Effect of Withdrawal or Revocation**.  If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

**10.04  Due Authorization by Creditors**.  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtors the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05  Entire Agreement**.  This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06  Section 1146 Exemption.**  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07  Provisions Governing Distributions.**  All payments and distributions under the Plan shall be made by the Debtors as indicated.  Any payments or distributions to be made by the Debtors pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Debtors pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed). All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Debtors and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Debtors in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Debtors by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Debtors.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08   Governing Law.**   Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**ARTICLE XI.**

**MODIFICATION OF THE PLAN**

**11.01**   The Debtors may propose amendments to or modifications of this Plan under Bankruptcy Code Section 1127 at any time prior to Confirmation upon notice to all parties affected thereby and providing such parties an opportunity to be heard on the proposed amendment. After Confirmation, the Debtors may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of Claimants or Interest holders are not materially and adversely affected.

**ARTICLE XII.**

**RETENTION OF JURISDICTION**

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01**  **Allowance of Claims**.  To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02**  **Executory Contracts and Unexpired Leases Proceedings**.  To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtors pursuant to §§ 365 and 1123 of the Code and Article VII of the Plan.

**12.03**  **Plan Interpretation**.  To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04**  **Plan Implementation**.  To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05**  **Plan Modification**.  To modify the Plan pursuant to § 1127 of the Code and applicable Bankruptcy Rules, except that no modification shall be made to the Plan that would impair, diminish or affect in any way the rights of participants of any Classes of the Plan without the consent of such Class.

**12.06**  **Adjudication of Controversies**.  To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtors.

**12.07**  **Injunctive Relief**.  To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08**  **Interpleader Action**.  To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09**  **Correct Minor Defects**.  To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10**  **Authorization of Fees and Expenses**.  To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11**  **Post-Confirmation Orders Regarding Confirmation**.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12**  **Final Decree**.  To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

Submitted By:

By: **/s/ Joyce W. Lindauer**
       **Joyce W. Lindauer**
       **State Bar No. 21555700**

**8140 Walnut Hill Lane**
**Suite 301**
**Dallas, Texas 75231**
**(214) 503-4033**
**(214) 503-4034 (Fax)**
**Attorney for MA BB Owen, LP and**
**MA-BBO Five, LP**


By:     **/s/ John Marlin**
       **Manager**
**MA BB Owen, LP and MA-**
**BBO Five, LP**