Samuel M. Stricklin (State Bar No. 19397050)
Michael L. Dinnin (State Bar No. 05888100)
Brian C. Mitchell (State Bar No. 24046452)
Bracewell and Giuliani LLP
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202-2711
Telephone: (214) 468-3800
Facsimile: (214) 468-3888
Email: sam.stricklin@bgllp.com
Email: michael.dinnin@bgllp.com
Email: brian.mitchell@bgllp.com

Attorneys for Hillcrest Bank, N.A.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| | § | |
| MA BB OWEN, L.P. | § | CASE NO. 11-40645 |
| | § | |
| MA BBO FIVE, L.P., | § | CASE NO. 11-40644 |
| | § | |
| Debtors. | § | |

**HILLCREST BANK, N.A.'S OBJECTION TO CONFIRMATION
OF DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**

Hillcrest, N.A. ("Hillcrest"), secured creditor and party in interest herein, files this Objection to Confirmation of Debtors' Second Amended Joint Plan of Reorganization ("Objection"), and in support thereof would show the Court the following:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## RELEVANT BACKGROUND

A.  **Debtors' Bankruptcy Filing**

1.  On February 28, 2011 (the "Petition Date"), MA BB Owen, LP ("BB Owen") and MA BBO Five, LP ("BB Five") (collectively, BB Owen and BB Five shall be referred to herein as the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Texas, Plano Division (the "Bankruptcy Court"). The chapter 11 case of BB Owen is currently pending in the Bankruptcy Court under case no. 11-40645.

2.  On May 25, 2011, Debtors filed their First Joint Plan of Reorganization [Docket No. 18]. The Debtors filed their First Disclosure Statement [Docket No. 19] on May 25, 2011.

3.  On May 26, 2011, the Debtors filed both a First Amended Joint Plan of Reorganization [Docket No. 20] on May 26, 2011 and Amended Disclosure Statement [Docket No. 22]. On May 27, 2011, the Court entered an order scheduling a hearing on the Amended Disclosure Statement for July 11, 2011 at 10:30 a.m. [Docket No. 23] (the "Disclosure Statement Hearing"). The Disclosure Statement hearing was continued on July 11, 2011 to July 14, 2011, to allow the Debtors to modify their Amended Disclosure Statement.

4.  The Debtors filed a Second Amended Joint Plan of Reorganization [Docket No. 34] ("Plan") and First Amended Disclosure Statement [Docket No. 35] ("Disclosure Statement") on July 13, 2011. On July 25, 2011, the Court entered an Order Approving the Debtors' First Amended Disclosure Statement and scheduling a hearing on the Debtors' Plan of Reorganization for September 6, 2011 [Docket No. 39]. Pursuant to the Court's Order Approving the Debtors' Disclosure Statement, the deadline for filing Objections to the Confirmation of the Plan is August 26, 2011.

5. On August 25, 2011, the Debtors filed an Unopposed Motion to Continue Hearing [Docket No. 44]. The Court granted the Debtor's Unopposed Motion to Continue/Reschedule Confirmation Hearing on August 26, 2011 [Docket No. 45], rescheduling the Confirmation Hearing for October 3, 2011.[1]

**B.    Hillcrest Bank's Secured Claim**

2. On or about December 15, 2006, Hillcrest and BB Owen entered into a secured loan agreement (the "Loan Agreement") whereby Hillcrest agreed to loan BB Owen up to $22,800,000.00 in connection with the acquisition of real property located in McKinney, Collin County, Texas (the "Property"). Pursuant to the terms of the Loan Agreement, and contemporaneously therewith, BB Owen executed a Promissory Note (the "Note") for the principal sum of $22,800,000.00 in favor of Hillcrest. The Note was secured by two deeds of trust granted by BB Owen in favor of Hillcrest. As additional security for the Note, Hillcrest obtained a Payment Guaranty (the "Guaranty") from Marlin Atlantis White, Ltd., John Marlin, and Roscoe F. White, III (collectively, the "Guarantors").

3. The initial maturity date under the Note, for full repayment of the entire principal balance and unpaid interest to Hillcrest by BB Owen, was December 15, 2008. The maturity date was subsequently modified via agreement, so that the maturity date under the Note was June 15, 2011. However, BB Owen committed multiple defaults under the Loan Agreement and Note, and Hillcrest notified BB Owen of the events of default on December 21, 2010. BB Owen failed to cure the defaults, and on January 26, 2011, Hillcrest accelerated the outstanding indebtedness (the "Indebtedness") under the Note and Loan Agreement. The Indebtedness

---

[1] In light of the Court's Order granting BB Owen's Motion to Continue/Reschedule Confirmation Hearing to October 3, 2011 [Dkt. No. 46], Hillcrest expressly reserves the right to amend or supplement this Objection as additional facts may come to light prior to the rescheduled Confirmation Hearing.

remains unpaid, and as of March 3, 2011, the approximate amount due and owing by BB Owen under the Note and Loan Agreement, including principal and accrued interest, was $17,891,780.27. Interest and penalties continue to accrue on this amount.

## BASIS FOR OBJECTIONS

### A.  The Debtor Bears the Burden of Proof for Confirmation

4. A debtor in bankruptcy bears the burden of proving each and every element of § 1129(a) by a preponderance of the evidence in order to attain confirmation of its plan. *In re Cajun Electric Power Cooperative, Inc.*, 230 B.R. 715, 728 (Bankr. M.D. La. 1999); *In re Barnes*, 309 B.R. 888, 895 (Bankr. N.D. Tex. 2004) (citing *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997)); *In re 8315 Fourth Avenue Corp.*, 172 B.R. 725, 735 (Bankr. E.D.N.Y. 1994). Furthermore, the court has a mandatory duty to determine whether the plan has met all of the requirements for confirmation, whether specifically raised by dissenting creditors or not. *Williams v. Hibernia National Bank*, 850 F.2d 250, 253 (5th Cir. 1988). The Debtors in this case are unable to meet their burden for confirmation.

### B.  The Plan Violates § 1129(a)(10) Because No Impaired BB Owen Class of Claims Accepts the Plan

5. If a class of claims is impaired under the plan, at least one class of impaired claims must accept the plan. 11 U.S.C. § 1129(a)(10). This accepting class cannot be an insider. *Id*. Under the Debtors' proposed Plan, Hillcrest's claim is impaired; therefore, one class of impaired claims must accept the Plan before it can be confirmed. However, there is no impaired class of claims in the BB Owen bankruptcy that accepts the proposed Plan.

*Artificial Impairment*

6. Many of the classes the Debtors designate as impaired and entitled to vote are either insiders or artificially impaired. A debtor cannot impair a class of claims for the sole

purpose of effectuating confirmation under section 1129(b). *See In re Texas Rangers*, 434 B.R. at 409 ("it would be inconsistent with public policy to construe the Code in a fashion that encourages debtors to deal with creditors by artificial impairment"); *In re Windsor on the River Associates, Ltd.*, 7 F.3d 127, 132 (8th Cir. 1993); *In re Dunes Hotel Assocs.*, 188 B.R. 174, 185 (Bankr. D.S.C. 1995)("the prohibition of artificial impairment of a class of claims in order to obtain technical compliance with §1129(a)(10) has been overwhelmingly endorsed by the case law"); *In re Village at Camp Bowie I, LP*, 2001 Bankr. LEXIS 3033, *22 (Bankr. N.D. Tex. 2011)("artificial impairment should not be encouraged"). Artificially impairing classes to effectuate confirmation would undermine one of the primary functions of bankruptcy law and is improper under the code. *In re Windsor*, 7 F.3d at 132 ; *In re Dunes Hotel*, 188 B.R. at 184 ("an attempt to manipulate the Chapter 11 process by engineering technical and literal compliance with §1129(a)(10) by artificially impairing a class of claims in the face of overwhelming opposition by truly impaired creditors constitutes a perversion of Chapter 11"). Thus, a class is not impaired if the alteration of rights is a sole result of the debtor's discretion. *Id*. at 132; *In re Dunes Hotel*, 188 B.R. at 184 (because the debtor had artificially impaired the class, it must be "deemed unimpaired and cannot constitute an accepting, impaired class for the purposes of 1129(b)"). Confirmation cannot be based on the acceptance of solely artificially impaired classes. There is no impaired class that will accept the proposed Plan, thus, the Plan cannot be confirmed.

7. The Debtors designate classes 2A and 3A as impaired and eligible to vote, however both of these classes are artificially impaired for the purpose of effectuating the Plan and their votes cannot be the basis for confirmation. Class 2A consists of Allowed Secured Tax Creditor Claims. These claims are paid in full, with interest, 30 days after the Effective date.

Plan, Art. V, Section 5.03. The Class 2A claims will be paid in full, with interest, within a month of the proposed Plan's effective date. Class 3A consists of Allowed Priority Creditor Claims. There are no claims under this class; however, even if there were such claims would be artificially impaired. *See* Debtors' Original Schedules E; *see also* Plan, Art. V. Class 3A claims are paid in full, with interest, over five years. This is impairment solely for the purpose of effectuating the Plan. *See In re Dunes Hotel*, 188 B.R. at 184; *see also*, *In re Windsor*, 7 F.3d at 132. Classes 2A and 3A are artificially impaired because the Debtors could, if they chose, render the claim unimpaired. *See In re Dunes Hotel*, 188 B.R. at 184 (finding a class was artificially impaired when the plan proposed to pay the creditor's claim in full, with interest, over six months); *see also*, *In re Windsor*, 7 F.3d at 132 (a plan that delayed payment to trade creditors by 60 days after the effective date cannot be confirmed if the purpose for the delay was to artificially impair the class). If the debtor does not have legitimate business reasons for impairment, it is merely artificial and the plan cannot be confirmed based solely on that class' vote. *In re Windsor*, 7 F.3d at 187. Here, the Debtors have no reason to delay payment to Class 2A or 3A except for artificial impairment; thus, the proposed Plan cannot be confirmed based solely on these classes' acceptance.

*Insider Claims and Subordination Agreements*

8. Additionally, the Debtors designate Classes 7A, 8, and 9 as impaired and eligible to vote; however, these claims are held by insiders and these classes are not eligible to vote under section 1129(a)(10). An insider is any affiliate, insider of an affiliate, or managing agent of the debtor. *See* 11 U.S.C. §101(31)(E)-(F). An insider includes any general partner in the debtor, relative of a general partner or person in control of the debtor, or person in control of the debtor. *Id*. at §101(31)(C). Class 7A consists of the Allowed Secured Claim of Tri-Properties, Ltd.

("Tri-Properties"). Upon information and belief, Tri-Properties is an affiliate and/or a person in control of BB Owen. Class 8 consists of the Allowed Claim of BB Owen Properties, L.P ("BB Owen Properties"). Upon information and belief, BB Owen Properties is an affiliate of BB Owen. Class 9 is the Allowed Claim of Marlin Atlantis White, Ltd. ("MAW"). Upon information and belief, MAW is an affiliate of BB Owen. Classes 7A, 8, and 9 are insiders of the Debtors; therefore, these classes cannot vote on the acceptance of the proposed Plan.

9. Further, the Class 6A and 7A claims are subordinate to Hillcrest's claim pursuant to certain Subordination Agreements dated June 15, 2009. Class 6A consists of the Allowed Secured Claim of Parkwood Real Estate Partners, LLC ("Parkwood"). Class 7A consists of Tri-Properties' secured claim. Under the Subordination Agreements, Parkwood and Tri-Properties agreed to subordinate their claims to Hillcrest's claim and appoint Hillcrest as their agent with an "irrevocable power of attorney," and their "proxy, for the purpose of exercising any and all rights…in connection with any [bankruptcy] proceeding, including the right to vote to accept or reject a plan." *See* Amended and Restated Subordination and Standstill Agreement, ¶4. Upon information and belief, Prep BB Owen, LLC is a wholly owned subsidiary of Parkwood and, as a result, Parkwood's claim is subject to the Subordination Agreement executed by Prep BB Owen, LLC and Hillcrest. Thus, Hillcrest is entitled to vote for both Parkwood and Tri-Properties. Hillcrest does not accept the proposed Plan, therefore, the Plan cannot be confirmed based on the votes of Classes 6A and 7A.

*No Impairment*

10. Class 10A consists of the Allowed General Unsecured Non-Insider Claims. These claims are to be paid in full on the effective date. *See* Plan, Art. V, 5.16. This Class is not impaired at all. Under the Bankruptcy Code, a class of claims is impaired under the plan unless

**OBJECTION OF HILLCREST BANK, N.A. TO CONFIRMATION**
**OF DEBTORS' JOINT PLAN OF REORGANIZATION – PAGE 7**

the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." 11 U.S.C. §1124(1). Under this provision, an unimpaired creditor must be able to exercise all of its rights with regards to the debtor as of the effective date of the plan. *In re Texas Rangers Baseball Partners*, 434 B.R. 393, 407 (Bankr. N.D. Tex. 2010). Payment in full, on the effective date, is not impairment at all. *See In re Texas Rangers*, 434 B.R. at 407 (Section 1124(1) requires that an unimpaired creditor be able to exercise all of its rights as of the plan's effective date); *In re Block Shim Dev. Co.*, 118 B.R. 450, 454 (N.D. Tex. 1990)("Impairment under § 1124 has generally come to mean any alteration of the holder's legal, equitable, or contractual rights, unless payment in case of the allowed amount of the claim is made on the effective date of the plan"). Thus, Class 10A is not eligible to vote on the Plan.

*No Accepting Impaired Class in BB Owen Bankruptcy*

11. Class 4 consists of the Allowed Secured Claim of Heritage Land Bank, ACA ("<u>Heritage</u>") in the BB Five bankruptcy case. *See* Plan, Art. V, 4.07. Heritage does not have a claim in the BB Owen bankruptcy. Although the Debtors have a joint plan of reorganization, there is no substantive consolidation in this bankruptcy proceeding and Classes of Claims are designated by Debtor. The Joint Plan of Reorganization cannot be confirmed based on the acceptance of one class of one Debtor. An impaired class of each Debtor must accept the Plan before it can be confirmed.

12. Lastly, Class 5 consists of Hillcrest's secured claim in the BB Five bankruptcy case and Class 5A consists of Hillcrest's secured claim in the BB Owen bankruptcy. See Plan, Art. V., 4.08, 4.09. Both of these classes are impaired and eligible to vote. Hillcrest does not accept the proposed Plan.

## C. The Plan Violates 11 U.S.C. § 1129(a)(7) Because Hillcrest Receives Less Under the Plan Than it Would in a Chapter 7 Liquidation

13. Pursuant to 11 U.S.C. § 1129(a)(7), impaired classes of claims under the Plan must receive property on account of their claim that is not less than the amount they would receive in a case under chapter 7. The Plan is not confirmable because the Plan Proponents have failed to meet their burden under § 1129(a)(7). The Plan Proponents bear the burden of proving § 1129(a)(7) by a preponderance of the evidence. *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters.)*, 994 F.2d 1060 (5th Cir. 1993).

14. The Debtors merely state that in a liquidation the properties would sell for less than the secured debts and the secured debt exceeds the value of the properties. Disclosure Statement, Art. IV. The Debtors claim there is a liquidation analysis provided in Section 13, however, there is no Section 13 in the Disclosure Statement or in the Plan. The Debtors' conclusory statement that impaired classes of claims will not receive less than they would under chapter 7 is not sufficient evidence of the same. The Debtors have not met their burden to prove the requirements under § 1129(a)(7).

15. Further, Hillcrest will receive less under the Plan that it would under a chapter 7 liquidation. Under a liquidation, Hillcrest will receive the value of its secured claim immediately. However, under the Plan, Hillcrest must wait 10 years before it will receive payment of its secured claim in full, and will not be paid a market or otherwise appropriate rate of interest. Accordingly, Hillcrest will receive less than it would under a chapter 7 liquidation and confirmation of the plan should be denied under § 1129(a)(7).

## D. The Plan Violates § 1129(b)(2)(A) Because it is Not Fair and Equitable

16. The proposed Plan unfairly discriminates against Hillcrest and it is not fair and equitable, as required under section 1129(b). 11 U.S.C. § 1129(b). The proposed Plan does not

provide for any dividend to Hillcrest's unsecured claim, if any, but it does provide a dividend to insider unsecured claims in the form of equity. *See* Plan at § 5.12. In addition, the interest rate under the proposed Plan is not commercially reasonable, as it is excessively low considering current market standards; the term, ten years, is too long and the amortization rate is too stretched, none of which reach market terms or otherwise commercially reasonable or appropriate standards. Hillcrest objects to the rate, term, and amortization provided under the Plan. Specifically, the proposed Plan provides for 2.5% interest, plus an additional, deferred 2.5% payment, paid at the end of the ten-year term; however, the Property is non-operating, undeveloped real estate, and the proposed Plan suggests a start-up venture. *See* Plan, Article V, Section 5.05(a). There is a high amount of risk associated with the proposed Plan, and as such, a high risk interest rate, short term, and quickened amortization are all required. *See In re T-H New Orleans Ltd. P'ship*, 116 F.2d 790, 801 (5th Cir. 1997) (bankruptcy courts must make a factual determination in computing the appropriate interest rate for the specific risk level in their cases (citing *In re Briscoe Enter. Ltd., II*, 994 F.2d 1160 (5th Cir 1993))). Furthermore, the Plan does not provide for or taken into account any discounting back to present value of the interest to be paid at the end of the term. *Id.*

17. In addition, the proposed Plan provides for a 40-year amortization with an additional deferred interest paid at maturity. *See* Plan, Article V, BB. This is essentially negative amortization. Courts commonly have reservations about negative amortization because it "tend[s] to be fraught with pitfalls that unfairly endanger creditors." *See Great Western Bank v. Sierra Woods Group*, 953 F.2d 1174, 1177 (9th Cir. 1992). Courts consider the following ten factors to determine whether negative amortization is fair and equitable: (1) does the plan offer a market rate of interest and present value of the deferred payments; (2) is the amount and length

of deferral reasonable; (3) is the debt to value ratio satisfactory throughout the plan; (4) are the financial projections reasonable and sufficiently proven, or is the plan feasible; (5) is the collateral depreciating, stable, or appreciating; (6) are the risks unduly shifted to the creditor; (7) how many secured creditors bear the risk; (8) does the plan preclude foreclosure; (9) is negative amortization included in the original loan terms; and (10) are there adequate safeguards to protect the secured creditor against plan failure. *See In re Apply Tree Partners, L.P.*, 131 B.R. 380, (Bankr. W.D. Tenn. 1991); *Great Western*, 953 F.2d at 1178. The Debtors' proposed Plan fails to satisfy any of these factors. Further, without something more than the Debtors' mere speculation that the real estate market may substantially improve, negative amortization paired with deferring substantially all repayment of principal with a forty year amortization is not fair and equitable. *See In re D&F Construction Inc.*, 865 F.2d 673, 676 (5th Cir. 1989) (negative amortization and a fifteen year delay in repayment of principal is "altogether impermissible speculation from the standpoint of [the secured creditor]"). The Plan's treatment of Hillcrest's secured claim is not fair and equitable, and the Plan cannot be confirmed.

18. The proposed Plan contains a collateral release provision that does not comply with the Code and is ill-defined and unreasonable. Under this provision, the proposed Plan provides the land designated for certain Phases shall be released from any lien for $12,500 per acre. *See* Plan, Article V, Section 5.05(a). However, the Debtors fail to provide any evidence that this is commercially reasonable, and as such, the release price is too low and the proposed Plan cannot be confirmed under 1129(b).

E. **The Plan Violates § 1129(a)(11) Because it is Not Feasible**

19. "The feasibility requirement requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable." *In re Beyond.com*

*Corp.*, 289 B.R. 138, 145 (Bankr. N.D. Cal. 2003). In this case, the Debtor has failed to offer anything other than hope and speculation regarding its ability to satisfy the obligations of creditors. *See, e.g., In re M&S Assocs., Ltd.*, 138 B.R. 845, 852 (Bankr. W.D. Tex. 1992) ("Confirmation of the Plan would merely allow the Debtor to postpone the inevitable, and to gamble, with the [secured creditor's] money, on the long shot possibility of a drastic improvement in the real estate market."); *In re Pelham St. Assocs.*, 134 B.R. 700, 701 (Bankr. D.R.I. 1991) (denying confirmation of plan predicated on a 5-year balloon payment to the secured creditor, concluding that the plan was "pure pie in the sky, and no secured creditor should be required to depend on such illusory pie.").

20. This case involves more than 1100 acres of raw/undeveloped land located in McKinney, Texas that the Debtors purchased in 2006 and plan to develop into a master-planned community for single-family housing, a segment of the economy that is notoriously struggling. *See* Disclosure Statement at p. 11.

21. Speculative and unrealistic projections are not sufficient to prove the feasibility of a plan of reorganization. *In re Canal Place Ltd. P'ship*, 921 F.2d 569, 579 (5th Cir. 1991). The proposed Plan relies on revenues generated from the BB Owen's property (which, to date, amount to zero) and additional financing. "Section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan." *See In re 8315 Fourth Ave. Corp.*, 172 B.R. 725, 735 (Bankr. E.D.N.Y. 1994*); In re SM 104 Ltd.*, 160 B.R. 202, 234 (Bankr. S.D. Fla. 1993). Plans often fail on feasibility grounds where the assets needed to fund the Plan are speculative. *See In re 8315 Fourth Ave. Corp.*, 172 B.R. at 735; *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 506-09 (Bankr. S.D. Tex. 1989).

22. Further, where a plan relies on operating revenues, "a debtor's past and present financial history are probative of the plan's feasibility." *Id.* The Debtors effectively have no history – this is a start-up venture in bankruptcy. The Debtors intend to construct their expansive, master-planned, single-family housing community at a time when "[s]ingle-family homebuilding in the [Dallas] area remains at the lowest level in generations . . ." and when "Dallas-area home prices fell 4 percent from a year earlier . . .." *See* Steve Brown, *Dallas area tops nation in construction employment growth*, DALLAS MORNING NEWS, June 28, 2011; *see also* Steve Brown, *Dallas-area home prices down 4 percent from a year earlier*, DALLAS MORNING NEWS, June 28, 2011. Further, under the proforma and the projections, the losses under the proposed Plan are underfunded. Considering the Debtors' prior inadequate performance in regards to developing the property (BB Owen has owned the Property since 2006, yet no development has taken place), the current state of the new home market and the conjectural and speculative projections in support of the Debtors' proposed Plan, the Plan is not feasible and cannot be confirmed as a matter of law.

## **PRAYER**

For the foregoing reasons, Hillcrest respectfully requests that the Court deny confirmation of the Plan and grant Hillcrest such other and further relief as is just and proper.

Dated: August 26, 2011

        Respectfully submitted,

        BRACEWELL & GIULIANI LLP

By: */s/ Brian C. Mitchell*
    Samuel M. Stricklin
    State Bar No. 19397050
    Michael L. Dinnin
    State Bar No. 05888100
    Brian C. Mitchell
    State Bar No. 24046452

    1445 Ross Avenue Suite 3800
    Dallas, TX 75202-2711
    Telephone: (214) 468-3800
    Facsimile: (214) 468-3888

**ATTORNEYS FOR HILLCREST BANK, N.A.**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the above and foregoing instrument has been served electronically via the Court's ECF noticing system on those parties who receive notice from that system, on the 26th day of August, 2011.

        */s/ Brian C. Mitchell*
        Brian C. Mitchell