## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| IN RE: | § |
| | § |
| **MA-BBO Five, LP** | § **CASE NO. 11-40644** |
| **MA-BBO Owen, LP** | § **CASE NO. 11-40645** |
| | § |
| **Reorganized Debtors.** | § |
| | § |

## <u>MEMORANDUM OPINION</u>

These cases are before the Court on a *Motion to Enforce Sale Order* [Doc. No. 180 (11-40644), Doc. No. 169 (11-40465)] filed by Trinity Falls Holdings, L.P. ("**Trinity Falls**") and *Motion to Set Aside* [Doc. No. 191 (11-40644), Doc. No. 180 (11-40645)] filed by National Covenant Clearing House, LLC ("**CCH**"). At issue is this Court's *Order Authorizing (A) The Sale of the Debtors' Right, Title and Interests in, to and under Substantially All of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) The Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* (the "**Sale Order**") entered on February 16, 2012, in each of the referenced bankruptcy cases.[1] CCH objects to Trinity Falls' motion to enforce the Sale Order and seeks, instead, to set it aside as to itself and the beneficiaries of a certain fee covenant (collectively, the "**CCH Parties**") that was nullified as a condition precedent to the sale. Trinity Falls together with Pulte Homes of Texas, L.P. ("**Pulte**"), Drees Custom Homes, L.P. ("**Drees**"), and Perry Homes, LLC ("**Perry Homes**") oppose CCH's motion. The Court conducted a hearing on the Motion to Enforce Sale Order on June 10, 2022, and a hearing on the Motion to Set Aside on June 29, 2022. The Court, having considered the

---

[1] The cases were not jointly administered. Instead, the Debtors filed substantially similar pleadings in both cases.

evidence admitted at the hearings and the parties' arguments, makes the following findings of fact

and conclusions of law.

## I.     RELEVANT FACTS

1.     The above-captioned debtors (the "**Debtors**") were special purpose entities in the

business of owning and developing vacant real property prior to the commencement of these

bankruptcy proceedings.  Specifically, (a) Debtor MA BB Owen, LP owned 1,115 acres of land,

and (b) Debtor MA-BBO Five, LP owned 592 acres of adjacent land (together, the "**Properties**").

The Properties are in Collin County, Texas, and known generally as Trinity Falls.

2.     The Debtors began developing the Properties in 2008.  On February 28, 2011, the

Debtors filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.

3.     Prior to filing for bankruptcy protection, the Debtors created a private transfer fee

obligation contained in and pursuant to a recorded "Declaration of Covenant" (the "**Transfer Fee**

**Covenant**").  The Debtors were the only parties that signed the Declaration creating the Transfer

Fee Covenant.

4.     Paragraph 5 of the Transfer Fee Covenant imposed a fee equal to 1% of the sales

price payable to CCH as the Trustee at each future sale of real estate during a term of 99 years.

Paragraph 6 exempted the Debtors from the transfer fee.  In addition, Paragraph 17 of the Transfer

Fee Covenant conveyed a portion of the fees to multiple third parties, which included the Debtors.

CCH refers to these third parties, excluding the Debtors, as "beneficiaries" that it represents as the

Trustee under the Transfer Fee Covenant.

5.     Having unilaterally created the Transfer Fee Covenant, the Debtors (defined therein

as the "Declarant") retained the right to unilaterally terminate and nullify the Covenant:

> Notwithstanding any provision or term to the contrary herein, this Declaration shall
> terminate and be rendered null, void and of no force and effect in its entirety with

respect to any portion of the Property that is the subject of a Termination (hereinafter defined). As used herein, a 'Termination' shall refer to a written document that (i) describes the portion of the Property to be released and exonerated from this Declaration ('Released Property'); (ii) is recorded in the [Office of Public Records] and (iii) is executed SOLELY by Declarant in Declarant's sole and absolute discretion without necessity of joinder of the Beneficiary(ies), the Trustee, an Owner, any non-profit designated in this Declaration or any other party affected by this Declaration (jointly and severally the 'Affected Parties'). Declarant shall be free to record a Termination notwithstanding any duty or obligation to the Affected Parties and regardless of any financial or legal effect such Termination may or will have on Affected Parties.

*See* Transfer Fee Covenant ¶ 25.

6.      Additionally, Paragraph 25 goes on to provide: "If a Termination is recorded as provided above, the legal description of the Property, for purposes of the Declaration, shall be deemed amended to exclude the Released Property." *Id.*

7.      The Affected Parties under the Transfer Fee Covenant had no right to object to termination. Further, the Declarants' right to terminate was not subject to their consent. Rather, the Declarant retained the right to terminate in its "sole and absolute discretion" without joinder of the Affected Parties.

8.      In 2011, the Texas legislature generally prohibited the imposition of private transfer fees such as the Transfer Fee Covenant: "Except as provided by this subchapter, a private transfer fee obligation created on or after the effective date of this subchapter is not binding or enforceable against a subsequent owner or subsequent purchaser of an interest in real property and is void." TEX. PROP. CODE § 5.202(a). As to any then-existing transfer fee covenants, § 5.203 of the Texas Property Code, which was effective on June 17, 2011, detailed the notice requirements for the continuation of existing private transfer fee obligations: "A person who receives a private transfer fee under a private transfer fee obligation created before the effective date of this subchapter must, on or before January 31, 2012, file for record a 'Notice of Private Transfer Fee Obligation' as

provided by this section in the real property records of each county in which the property is located." TEX. PROP. CODE ANN. § 5.203(a).  In addition, § 5.203(b) required that: "Multiple payees of a single private transfer fee under a private transfer fee obligation must designate one payee as the payee of record for the fee." TEX. PROP. CODE ANN. § 5.203(b).

9.      On September 9, 2011, pursuant to § 5.203(b) of the Texas Property Code, CCH was designated as payee and trustee to act on behalf of all payees under the Transfer Fee Covenant. CCH filed a "Notice of Private Transfer Fee Obligation" in January 2012 as required by § 5.203(a) of the Texas Property Code.

10.      On December 30, 2011, in their bankruptcy cases, the Debtors each filed a *Motion to (A) Approve the Debtors' Entry Into Purchase Agreement; (B) Approve the Procedures for the Solicitation of Other Offers to Purchase the Debtors' Assets; (C) Approve the Form and Manner of Notice Thereof; (D) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (E) Approve the Bid Protections and Procedures; and (F) Approve a Break-up Fee in Connection with the Transaction Contemplated by the Purchase Agreement Filed by MA-BBO Five, LP* (the "**Sale Procedures Motion**") and a *Motion for an Order Authorizing (A) the Sale of the Debtors' Right, Title and Interests in, to and under Substantially All of the Debtors' Assets Free and Clear of Claims, Encumbrances, Liens, and Interests, (B) The Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Related Relief* (the "**Sale Motion**").  The Debtors thereby sought to sell the Properties free and clear of all liens, claims, encumbrances, and other interests.

11.      The service list attached to the Sale Procedures Motion and the Sale Motion did not identify the CCH Parties.  Likewise, the service list attached to the *Notice of Hearing on the Sale Procedures Motion* did not identify the CCH Parties.

4

12.    In addition to service of the Sale Procedures Motion and the Sale Motion upon the service list, the Debtors published a detailed "Notice of Transaction" describing the proposed sale of the Properties free and clear of liens, claims, encumbrances and other interests in the *Dallas Morning News* on January 24, 2012. The *Dallas Morning News* is a daily, regional newspaper published in Dallas Texas.

13.    On February 6, 2012, the Debtors each filed a *Motion to Reject Declaration of Covenant* (the "**Motion to Reject**") in their respective cases. Attached to the Motion to Reject was a certificate of service, along with a mailing matrix, identifying the parties on whom service of the Motion to Reject was made. The recipients did not include any of the CCH Parties. In addition, the Debtors filed a *Notice of Expedited Hearing* on the Motion to Reject on February 9, 2012. The attached certificate of service and accompanying mailing matrix did not include CCH or any of the beneficiaries under the Transfer Fee Covenant.

14.    On February 10 and 14, 2012, the Debtors held an auction, pursuant to which an entity called CH-B Trinity Falls, L.P. (hereafter, the "**Original Buyer**") offered the highest and best qualified bid and thereafter emerged as the buyer of the Properties. Article 9, paragraph n, of the Purchase and Sale Agreement provided as a condition of closing:

> **Termination of the Declaration**. (1) Seller shall have executed the Termination and recorded the Termination in the Real Property Records of Collin County, Texas, (2) the Bankruptcy Court shall have approved the Termination in the Sale Order, and (3) the Bankruptcy Court shall have found that the Termination terminated the Declaration in all respects and that the Declaration, as a result of such Termination, has been released as an encumbrance affecting the Property and is otherwise null, void, and of no further force and effect.

15.    The Debtors took action to exercise their unilateral, contractual right to nullify the Transfer Fee Covenant as to the entirety of the Properties prior to the entry of the Sale Order. Specifically, on February 14, 2012, the Debtors executed that certain "Termination of Declaration

Case 11-40645   Doc 212   Filed 08/11/22   Entered 08/11/22 16:30:03   Desc Main
Document     Page 6 of 22

of Covenant" (the "**Termination**"), whereby the Debtors terminated and rendered "null, void, and of no force and effect in its entirety" the Transfer Fee Covenant.

16.     The Court entered the Sale Order, which attached a copy of the Purchase and Sale Agreement, on February 16, 2012.  In the Sale Order, the Court ordered that the sale of the Properties shall be:

> Free and clear, unless otherwise specified in the Successful Bidder Agreement, of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens—including, without limitation, mechanics', materialmens' and other consensual and non-consensual liens and statutory liens— judgments, demands, encumbrances, rights of first refusal, offsets, contracts, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any Court or foreign or domestic governmental entity, or charges of any kind or nature[.]

*See* Sale Order, ¶ 10(c).

16.     As required by the Purchase and Sale Agreement, and as requested by the Debtors, the Court's Sale Order also acknowledged:

> [T]he Termination of Declaration of Covenant executed by the Debtors on February 14, 2012 (the 'Termination') terminated that certain Declaration of Covenants dated August 11, 2009, executed by the Debtors collectively as Declarant, and recorded in the Official Public Records of Collin County, Texas as document number 20090814001022730 (the 'Declaration') in all respects and that the Declaration, as a result of such termination, is null, void, and of no further force or effect.  Cause exists for the Court to approve the Debtors' termination of the Declaration and the Termination.

*See* Sale Order, ¶ HH.

17.     On or about February 28, 2012, counsel for the Debtors and the Original Buyer each sent to the escrow agent a set of closing instructions and the original signed deeds for the Properties, which had been executed on February 27, 2012.  The closing instructions required, as

a condition to closing the sale, that the escrow agent record the Termination before the deeds were recorded.

18.    The Termination and the deeds were all recorded on February 29, 2012.  The Termination was recorded first, as evidenced by the recording number: 20120229000234**670**. (Emphasis added.)  The MA-BB Owen deed was recorded second, as evidenced by the recording number: 20120229000234**680**.  (Emphasis added.)  The MA-BBO Five deed was recorded third, as evidenced by the recording number: 20120229000234**690**.  (Emphasis added.)

19.    Trinity Falls is seeking an order that enforces the Sale Order by holding that the Transfer Fee Covenant has been terminated and rendered null and void.  Trinity Falls is a subsequent purchaser from the Original Buyer of certain tracts of the Properties, having purchased approximately 1,040 acres of real property and 253 residential lots along with other intangible property, entitlements and development rights on or about July 20, 2016.

20.    CCH has not received any assessments or transfer fees under the Transfer Fee Covenant since the Termination in 2012 (if at all).  Nonetheless, CCH re-filed the "Notice of Private Transfer Fee Obligation" in the real property records every three years (in 2015, 2018, and 2021).[2]

21.    On September 21, 2021, CCH filed a so-called "Notice of Rescission and Invalidity" in the deed records (the "**Notice of Rescission**"), purporting to rescind, invalidate and void the Termination.  The Declaration did not contain any provisions authorizing CCH to rescind the Transfer Fee Covenant.  CCH's affidavit in support of its Motion to Set Aside states that it did not become aware of the Debtors' bankruptcy and the Sale Order until November 29, 2021.

---

[2] Section 5.203(d)(1) requires that: "A person required to file a notice under this section shall … refile the notice described by this section not earlier than the 30th day before the third anniversary of the original filing date described by Subsection (a) and within a similar 30-day period every third year thereafter …."  TEX. PROP. CODE § 5.202(d)(1).

22.     In the more than 10 years that passed between the entry of the Sale Order, the Debtors' recording of the Termination, and CCH's recording of the Notice of Recission, the Properties were developed by multiple builders.  Approximately 1,500 homeowners are affected by CCH's assertion that their deeds are restricted by the Transfer Fee Covenant.

23.     In December 2021, counsel for CCH corresponded with counsel for Trinity Falls, setting out detailed legal arguments challenging the Termination and the validity of the Sale Order as to the CCH Parties.

24.     At the hearing on the Motion to Enforce, CCH complained that the CCH Parties had not received notice of the bankruptcy proceedings, the Sale Motion, or the Motion to Reject.  Joseph Alderman, CCH's Chief Executive Officer, testified that had the CCH Parties received notice, they could have objected to the sale of the Properties or submitted a bid for the Properties.

## II.      JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This contested matter seeks interpretation and enforcement of the Sale Order.  *See* FED. R. BANKR. P. 9014.  A bankruptcy court has continuing core jurisdiction to enforce its own orders.  *See Ins. Co. of N. Am. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1063 (5th Cir. 1997) (recognizing that actions calling on a bankruptcy court to construe and enforce its own orders are core proceedings).  Additionally, a proceeding is core if it "could arise only in the context of a bankruptcy case."  *Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014 (5th Cir. 1991) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).  Adjudicating this matter requires an interpretation of the Sale Order, entered pursuant to 11 U.S.C. § 363, which could only arise in the context of a bankruptcy case.

## III.   DISCUSSION

Trinity Falls, together with Pulte, Drees and Perry Homes, seek to enforce the Sale Order, which acknowledged and approved the contractual termination of the Transfer Fee Covenant. CCH opposes the Motion to Enforce and asks the Court find that (a) the CCH Parties were entitled to, but did not receive, actual notice of the bankruptcy proceedings, including the Sale Motion; (b) the Sale Order is void as to CCH and the non-debtor beneficiaries of the Transfer Fee Covenant due to the lack of actual notice; (c) the Sale Order must be set aside pursuant to Rule 60(b)(1), (2), (4) and/or (6) of the Federal Rules of Civil Procedure, as adopted and applied to these cases by Federal Rule of Bankruptcy Procedure 9024; and (d) the termination of the Transfer Fee Covenant was ineffective pursuant to the Covenant's express terms and due to the failure to provide actual notice.

### A.   Rule 60(b)

Rule 60(b) contains six narrowly defined grounds on which a court may relieve a party from an otherwise final judgment or order.  Rule 60(b) of the Federal Rules of Civil Procedure sets forth the requirements for relief from a judgment or order as follows:

(b)      Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

9

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

With respect to timeliness, Rule 60(c) provides: "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding. *See* FED. R. CIV. P. 60(c)(1). As the U.S. Supreme Court recently explained in *Kemp v. United States*, ___ U.S. ___, 142 S.Ct. 1856 (2022): "Rule 60(c) imposes deadlines on Rule 60(b) motions. All must be filed 'within a reasonable time.'" *Kemp*, 142 S.Ct. at 1861 (citing FED. R. CIV. PROC. 60(c)(1)). The Supreme Court continued: "Rule 60(b)(1) motions, like all Rule 60(b) motions, must be made 'within a reasonable time'" and no later than one year. *Id.* at 1864 (citing FED. R. CIV. PROC. 60(c)(1)).

## B. Rule 60(b)(1) and (2)

Here, CCH relies primarily on Rule 60(b)(4), but also on subsections (b)(1), (b)(2), and (b)(6) in support of its legal arguments to set aside the Sale Order. As an initial matter, CCH's request for relief from the Sale Order under (b)(1) and (b)(2) is untimely. *See* FED. R. BANKR. P. 60(c). The Court entered the Sale Order approximately 10 years before CCH filed its Motion to Set Aside and well outside the one-year deadline for seeking relief under (b)(1) and (b)(2).

Even if CCH could overcome the time bar, CCH failed to establish that grounds exist to set aside the Sale Order based on "mistake" (Rule 60(b)(1)) or on "newly discovered evidence" (Rule 60(b)(2)). To obtain Rule 60(b)(2) relief, the movant must show: (1) he "exercised due diligence" in obtaining the newly discovered information; and (2) the evidence is "material and controlling and clearly would have produced a different result if present before the original judgment." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005) (quoting *Goldstein v.*

*MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003)).  CCH does not identify any such evidence in

its Motion to Set Aside.  Rather, CCH argues that grounds exist for relief under Rule 60(b)(1) and

(b)(2) because of the allegedly defective termination of the Transfer Fee Covenant (discussed

below).

CCH argues that the Court erred in approving and acknowledging the effectiveness of the

Termination in ¶ HH of the Sale Order.  Although the Debtors had signed the Termination prior to

the entry of the Sale Order, and although they had exhibited an intent to exercise their unilateral

right to terminate the Transfer Fee Covenant, and although they had requested that the Court

approve and acknowledge the termination in the Sale Order, CCH argues that the Termination was

ineffective because the Properties were conveyed to the Original Buyer prior to its recording.  CCH

asserts that the Properties were transferred to the Original Buyer when the signed deeds were

placed into escrow and, therefore, that the Debtors were no longer the owners of the Properties

with the power to terminate the Transfer Fee Covenant when the Termination was recorded.  CCH

primarily bases its argument on its interpretation of the Texas Supreme Court's ruling in *Cowden*

*v. Broderick & Calvent*, 114 S.W.2d 1166, 1169 (Tex. 1938).

In Texas, to effectuate a conveyance of real property, a deed must (a) be in writing, (b) be

signed by the grantor, (c) reasonably identify the parties and land, (d) be delivered, and (e) be

accepted.  *See* TEX. PROP. CODE § 5.021; *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d

859, 869 (Tex. App.—Dallas, 2005); *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008).  To

establish delivery of a deed, two elements must be proven: (a) the deed must be delivered into the

control of the grantee, and (b) the grantor must intend the deed to become operative as a

conveyance.  *See, e.g., Binford v. Snyder*, 189 S.W.2d 471, 475 (Tex. 1945); *Hicks v. Loveless*,

714 S.W.2d 30, 32 (Tex. App.— Dallas 1986, writ ref'd n.r.e.).  "The question of delivery of the

deed, being controlled by the intent of the grantor, is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument." *Rothrock v. Rothrock*, 104 S.W.3d 135, 138 (Tex. App. – Waco, 2003) (citing *Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257, 261 (Tex. 1974)). *See also Hernandez v. Hernandez*, 547 S.W.3d 898 (Tex. App.—El Paso 2018) (holding that "delivery" occurred when closing requirements were satisfied).

In this case, the parties expressly intended that the conveyance of title to the Properties occur after the Termination was recorded and the Transfer Fee Covenant was nullified. In the Asset Purchase Agreement, the sale of the Properties to the Original Buyer was conditioned upon the nullification of the Transfer Fee Covenant. The Sale Motion, which was filed contemporaneously with a request for approval of the Asset Purchase Agreement, also shows an intent to nullify the Transfer Fee Covenant prior to a sale of the Properties. Likewise, the closing instructions expressly required that the deeds could not be delivered to the Original Buyer until the escrow agent had verified that the Termination had been recorded. Thus, in this case, it appears that the parties to the escrow agreement intended title to transfer after termination of the Transfer Fee Covenant. *See also Hernandez v. Hernandez*, 547 S.W.3d 898 (Tex. App.—El Paso, 2018) (finding that delivery of a deed occurred upon satisfaction of closing requirements). Relation back would contravene the intent of all parties to the escrow agreement.

CCH does not dispute that the parties intended to deliver the deeds to the Original Buyer after termination of the Transfer Fee Covenant. Instead, CCH argues that under *Cowden*, delivery is retroactive to the date the deed was placed into escrow as a matter of law. CCH argues that "delivery" occurred (and the transfer of title to the Original Buyer relates back to) when the executed deeds were placed in the custody of the escrow agent (February 28, 2012) and, therefore,

Case 11-40645   Doc 212   Filed 08/11/22   Entered 08/11/22 16:30:03   Desc Main
Document      Page 13 of 22

the Debtors no longer had the right to terminate the Transfer Fee Covenant when the Termination

was recorded (February 29, 2012).   This interpretation is an inaccurate statement regarding the

holding in *Cowden.*  In *Cowden*, the Texas Supreme Court held that when determining the effective

date of delivery, effect will be given to the parties' intent:

> Undoubtedly, as between the parties to the escrow agreement and deed, **effect will
> be given to their intention**, evidenced by the instruments, that the deed shall upon
> performance of the condition take effect from the date of delivery in escrow.  Here
> such intention is clearly manifested.

*Id*. at 1169 (citations omitted, emphasis added).  The Texas Supreme Court went on to conclude

that the parties therein intended that conveyance be effective upon delivery into escrow.  The Texas

Supreme Court, therefore, gave effect to the parties' intent by determining that the deed became

effective on the date of delivery into escrow.  The Texas Supreme Court did not hold that relation-

back occurs as a matter of law without regard to the intent of the parties.[3]

Seven years later, the Texas Supreme Court again held that whether and when "delivery"

occurred is determined by the intent of the grantor.  *Binford v. Snyder*, 189 S.W.2d 471, 475 (Tex.

1945) ("Under the evidence quoted, it appears to us that Binford cannot claim title to the property

in virtue of this deed because it indisputably appears that the deed was never delivered to Binford

with the intent on the part of the grantors (Mrs. Snyder and Carnes) that the same should become

effective as a conveyance.").  More recently, the Texas Supreme Court reiterated that for a transfer

of title to occur, the delivery of a deed must be "accompanied by the requisite intent that it is to

become operative as a conveyance." *Stephens County Museum, Inc. v. Swenson,* 517 S.W.2d 257,

262 (Tex. 1974).  Given that the clear intent of all parties was to terminate the Transfer Fee

---

[3] Interestingly, *Cowden* shows that a conveyance can be effective prior to its recording based on the intent of the parties, and upon recording, the conveyance relates back to the date the parties intended.  Likewise, the termination of the Transfer Fee Covenant in this case was effective prior to recording based on the intent of the parties, and when the Termination was recorded, the date of termination related back to the date the Debtors executed the Termination, which was acknowledged in the Sale Order.

Covenant prior to delivery and acceptance of the deeds, the delivery here occurred after termination.

In sum, even if CCH's request for relief from the Sale Order were somehow construed to be timely under Rule 60(c)(1), CCH's (b)(1) and (b)(2) argument fails.

### C.  Rule 60(b)(4)

CCH next argues that the Sale Order is void under Rule 60(b)(4) because the CCH Parties did not receive notice of the Debtors' bankruptcy cases or the Sale Motion.  CCH also argues that its Motion to Set Aside was filed in a reasonable time due to that lack of notice.  Trinity Falls opposes the requested relief from the Sale Order, arguing that the CCH Parties were not entitled to notice because they were not creditors of the Debtors and did not hold any known or reasonably ascertainable claims against them.

### 1.  Notice of Bankruptcy Proceedings

The Fifth Amendment's requirement of due process applies in bankruptcy cases:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Greene v. Lindsey*, 456 U.S. 444, 449–50 (1982) (emphasis omitted) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  It is well-settled that due process requires that "known" creditors be given direct notice, by mail, of a bar date and of other proceedings relevant to their claims.  *See New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 297 (1953); *Mullane*, 339 U.S. at 314.  It is equally well-settled that reasonable publication notice is sufficient for creditors whose identities are not known.  *See Mullane*, 339 U.S. at 314.  *See also, e.g., In re Thomson McKinnon Sec. Inc.,* 130 B.R. 717, 720 (Bankr. S.D.N.Y. 1991) (applying the *Mullane*

standard in bankruptcy proceedings and noting that actual notice is not required for those creditors "who hold only conceivable, conjectural or speculative claims.").

As the Fifth Circuit has explained, "[t]he level of notice required by the Due Process Clause depends on whether a creditor is 'known' or 'unknown.'" *In re Placid Oil*, 753 F.3d 151, 154 (5th Cir. 2014).  Known creditors include both claimants actually known to the debtor and those whose identities are "reasonably ascertainable."  *Id.* (citing *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489–490 (1988)).

> A claimant is "reasonably ascertainable" if he can be discovered through "reasonably diligent efforts."  "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable."  By contrast, the debtor need only provide "unknown creditors" with constructive notice by publication.

*In re Placid Oil Co.*, 753 F.3d at 154–55 (citations omitted).

In this case, the CCH Parties were not known or reasonably ascertainable creditors of the Debtors.  The Bankruptcy Code defines "creditor" as "[an] entity that has a claim against the debtor that arose at the time of or before the [debtor's] order for relief[.]"  11 U.S.C. § 101(10).  The Bankruptcy Code defines "claim" as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"  11 U.S.C. § 101(5)(A).  CCH has not shown that the Debtors had any specific information that reasonably suggested a claim for which the Debtors might be liable to the CCH Parties.  *See In re Placid Oil*, 753 F.3d at 154.  The CCH Parties had no right to payment from the Debtors under the Transfer Fee Covenant.  In fact, the Debtors were expressly excluded from paying fees to CCH under the Transfer Fee Covenant.

The Transfer Fee Covenant created an obligation of *future* property owners to pay a private transfer fee to CCH upon a *future* sale of any portion of the Properties.  *See* TEX. PROP. CODE §

5.201(5) (defining "private transfer fee obligation").  More particularly, the Transfer Fee Covenant

required future sellers to pay a percentage of future proceeds of any future home sale to CCH as

Trustee, which CCH then held in trust for the beneficiaries of the Transfer Fee Covenant (after

deducting its fee).  *See* Transfer Fee Covenant at ¶ 11 ("Trustee Rights").  A claim against the

future sellers would only arise, if at all, in the event (a) a future purchaser bought some or all the

Properties, (b) such future purchaser then sold some or all the Properties to another purchaser, and

(c) the Debtors had not terminated the Transfer Fee Covenant before the Properties were sold.

Under such circumstances, the CCH Parties were not creditors (known or unknown) of the Debtors

but, at best, held speculative and conjectural claims against someone other than the Debtors.

CCH nonetheless received notice of the Debtors' intent to sell the Properties as well as the

Termination of the Transfer Fee Covenant.  CCH received publication notice of the Debtors' intent

to sell the Properties through the "Notice of Transaction" published in the *Dallas Morning News*

on January 25, 2012.  The "Notice of Transaction" clearly expressed an intent to sell the Properties

free and clear of any lien, claim, encumbrance, or other interest.  And CCH received record notice

of the termination of the Transfer Fee Covenant through the recording of the Termination in the

real property records on February 29, 2012.  Considering the non-creditor status of the CCH

Parties, this notice was reasonable under the circumstances and satisfied due process as required

by *Mullane* and its progeny.[4]

---

[4] Notably, the U.S. Supreme Court only requires notice be given to creditors to "afford them an opportunity to present their objections." *Greene,* 456 U.S. at 450.  The CCH Parties have not shown – indeed, they cannot show – any objection they would have a right to present.  When questioned, Mr. Alderman testified that he would have submitted a bid for the Properties.  However, to the extent the CCH Parties complain that the lack of actual notice of the Sale Motion deprived them of an opportunity to bid for the Properties, competing bidders are not within the "'zone of interests intended to be protected' under bankruptcy law.'" *In re Gulf States Steel, Inc. of Alabama,* 285 B.R. 739, 742 (Bankr. N.D. Ala. 2002) (citing several circuit court cases recognizing that a competing bidder generally lacks standing to challenge a sale).

## 2.   Notice of Termination

To the extent CCH complains that the Sale Order is void because the CCH Parties were denied an opportunity to protect their alleged "rights" in the Properties due to lack of notice, the CCH Parties were not contractually entitled to advance notice of the Termination.  The Transfer Fee Covenant expressly provided that "[n]otwithstanding any provision or term to the contrary[,]" the Debtors had the "sole and absolute discretion" to terminate the Transfer Fee Covenant, rendering it "null, void and of no force and effect," through a written Termination that described "the portion of the Property to be released and exonerated."  *See* Transfer Fee Covenant at ¶ 25("Declarant's Right to Terminate").  The Transfer Fee Covenant further provided that the Debtors "shall be free to record a Termination **notwithstanding any duty or obligation to the Affected Parties and regardless of any financial or legal effect such termination may or will have on Affected Parties**."  *See id.* (Emphasis added.)  Given that the CCH Parties did not have a contractual right to advance notice of the Termination, or any right to prevent the nullification of the Transfer Fee Covenant, the record notice of the Termination and publication notice of the proposed sale of the Properties meets the requisites of *Mullane* and its progeny and was reasonable and adequate under the circumstances.

## 3.   Timeliness

Even if the CCH Parties could show meritorious grounds for relief from the Sale Order, a motion seeking relief from a final order under Rule 60(b)(4) must be filed in a "reasonable time," and the movant bears the burden of establishing timeliness.  *See, e.g., Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016). The Supreme Court in *Kemp* declined to define the "reasonable time" standard.  *Kemp v. United States*, ___ U.S. ___, 142 S.Ct. 1856, 1864 (2022).  However, the Fifth Circuit has held that "a 'reasonable time' depends on the facts of each case, taking into

consideration the interest in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Osborne v. Homeside Lending, Inc.* (*In re Osborne*), 379 F.3d 277, 283 (5th Cir. 2004) (alterations in original) (citing *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

Here, the CCH Parties are challenging a Sale Order that was entered more than 10 years ago. "Because of the great interest in the finality of judicial sales, the standard for setting aside a confirmed sale is stricter than the standard for rejecting a proposed sale." *In re Transcontinental Energy Corp.*, 683 F.2d 326, 328 (9th Cir. 1982) (citing *In re General Insecticide Co.*, 403 F.2d 629, 630-31 (2d Cir. 1968)). Compelling equities must outweigh the interests in finality. *Id.* Indeed, § 363(m) of the Bankruptcy Code underscores the importance of finality in bankruptcy sales by creating rule of "statutory mootness," which bars appellate review of any sale authorized by § 363(b) or (c) so long as the sale was made to a good-faith purchaser and was not stayed pending appeal.[5] No such compelling circumstances exist in this case.

Other parties would be prejudiced if this Court were to set aside the Sale Order as to the CCH Parties. The Original Buyer has sold its interest in portions of the Properties to Trinity Falls, among others. Trinity Falls, Pulte, Drees and Perry Homes have developed or are continuing to develop the Properties. They all relied on the recorded Termination and Sale Order. In the 10 years since the nullification of the Transfer Fee Covenant, portions of the Properties have been sold to multiple developers and have been sold to more than a thousand individuals who also relied on the validity of the Termination and Sale Order. The relief sought by CCH would adversely

---

[5] *See, e.g., Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.),* 600 F.3d 231, 247 (2d Cir. 2010) (citations omitted)*; see also Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 105 F.3d 837, 838 (2d Cir. 1997) (holding that pursuant to § 363(m) appellate courts "have no jurisdiction to review an unstayed sale order once the sale occurs, except on the limited issue of whether the sale was made to a good faith purchaser"); *Morimoto v. C Whale Corp (In re C Whale Corp.),* 2022 WL 135125, at *4 (5th Cir. Jan. 13, 2022) (per curium) (holding that it "lack[ed] jurisdiction over this appeal" of a sale order, even where the appeal concerned the question whether the bankruptcy court had jurisdiction to approve the sale in the first instance).

impact the value and marketability of all the Properties by reimposing a private transfer fee obligation that would require homeowners to pay a portion of any future sales to CCH.

The CCH Parties could have easily learned of the Termination by checking the real property records. The Termination was recorded on February 29, 2012. The purpose of the recording statutes is to publicly disclose all matters affecting Texas land titles. *See Leonard v. Benford Lumber Co*. 216 S.W. 382, 383 (Tex. 1919). The goal is to make title information available to all concerned and to protect the rights of the immediate purchases as well as those who may subsequently acquire the property. *See Smith v. Crosby*, 23 S.W. 10, 18 (Tex. 1893). In this case, however, CCH asserts that it did not check the real property records for more than 10 years. The CCH Parties had facts in their possession (*i.e.*, the fact that no transfer fees had been received) to cause them to inquire and check the real property records. CCH asserts it nevertheless delayed for more than 10 years.

But CCH was not finished delaying. CCH was actually aware of the recorded Termination no later than September 21, 2021, when it filed the Notice of Rescission in the property records. In addition, CCH was indisputably aware of the Debtors' bankruptcy cases and the Sale Order by November 29, 2021. CCH was corresponding with counsel for Trinity Falls and sending detailed legal arguments challenging the Termination and Sale Order in December 2021. Nonetheless, CCH did not file its Motion to Set Aside with this Court until May 18, 2022.

Finally, CCH has not adequately explained its delay. Given that the Debtors were in the business of developing and selling real estate, it was unreasonable for CCH to stand still and not check the property records for 10 years without receiving any transfer fees. CCH continued to file legal notices in the property records relating to the Transfer Fee Covenant – so it was aware of the importance of public property records, and CCH could have found the Termination. Even after

CCH was indisputably aware of the Debtors' bankruptcy cases and the Sale Order, and while it exchanged legal arguments with Trinity Falls, CCH further delayed seeking any relief from this Court for six months.  Under these circumstances, the Court concludes that CCH has not shown that it requested relief from the Sale Order under Rule 60(b)(4) in a "reasonable time."

### D.  Rule 60(b)(6)

Finally, CCH seeks to set aside the Sale Order under Rule 60(b)(6).  A motion seeking relief under Rule 60(b)(6), like all Rule 60(b) motions, must be filed in a reasonable time.  *See* FED. R. CIV. P. 60(c)(1).  As discussed above, CCH failed to file its Motion to Set Aside in a in a reasonable time.  Moreover, Rule 60(b)(6) is not a substitute for Rule 60(b)(1), (2) or (4).  As the U.S. Supreme Court recently explained:

> Rule 60(b)(6) provides a catchall for 'any other reason that justifies relief.' This last option is available only when Rules 60(b)(1) through (b)(5) are inapplicable. Even then, 'extraordinary circumstances' must justify reopening.

*Kemp*, 142 S.Ct. at 1861 (citations omitted); *Plotner v. AT&T Corp*., 224 F.3d 1161, 1174 (10th Cir. 2000) ("As for Rule 60(b)(6), it may only be invoked as for causes not covered by another cause specifically enumerated in Rule 60(b)(1–5)[.]").

Assuming Rule 60(b)(6) is applicable, CCH must establish extraordinary circumstances that would justify setting aside a portion of the Sale Order and re-imposing a private transfer fee obligation upon the Properties.  *See In re Transcontinental Energy Corp.*, 683 F.2d at 328.  No such compelling equities exist in this case.  CCH neglected to check the property records, where it could have and would have discovered the Termination at any time after February 29, 2012.  The Termination was a condition precedent to the sale of the Properties to the Original Buyer, and there is no dispute that the Original Buyer was a good faith purchaser of the Properties.  CCH had no right to advance notice of Termination.  More than 10 years have passed since the entry of the Sale

Order and the recording of the Termination, and many parties, including Trinity Falls, have relied on the validity of the Sale Order and Termination. Accordingly, CCH has failed to show extraordinary circumstances that would justify its motion on Rule 60(b)(6) grounds.

### E.  Motion to Enforce

In the Motion to Enforce, Trinity Falls requests a ruling from the Court that (a) the Transfer Fee Covenant was terminated prior to the sale of the Properties to the Original Buyer (as reflected in the Sale Order, ¶ HH) and (b) the Properties were sold free and clear of the Transfer Fee Covenant and any right to private transfer fees pursuant thereto (as reflected in the Sale Order, ¶ 10). Paragraph HH of the Sale Order provided as follows:

> [T]he Termination of Declaration of Covenant executed by the Debtors on February 14, 2012 (the 'Termination') terminated that certain Declaration of Covenants dated August 11, 2009, executed by the Debtors collectively as Declarant, and recorded in the Official Public Records of Collin County, Texas as document number 20090814001022730 (the 'Declaration') in all respects and that the Declaration, as a result of such termination, is null, void, and of no further force or effect. Cause exists for the Court to approve the Debtors' termination of the Declaration and the Termination.

*See* Sale Order, ¶ HH. Paragraph 10(c) generally provided that the sale of the Properties was "free and clear" of liens, claims, encumbrances, and other interests.

Having denied the CCH's Rule 60(b) Motion to Set Aside, the Sale Order is a final order enforceable in accordance with its terms. In the Sale Order dated February 16, 2012, the Court found and concluded that the Termination terminated the Declaration of Covenants containing the transfer fee obligation in all respects and the Declaration was null, void, and of no force and effect. The Transfer Fee Covenant was therefore terminated no later than February 16, 2012, which is prior to the sale of the Properties to the Original Buyer. The sale of the Properties to the Original Buyer was free and clear of liens, claims, encumbrances, and other interests.

### IV.     CONCLUSION

For all the foregoing reasons, the Court concludes that CCH has failed to establish grounds to set aside the Sale Order under Rule 60(b).  The Court further finds that Trinity Falls' Motion to Enforce should be granted.  The Sale Order is a final order of the Court and is enforceable according to its terms as to the CCH Parties.  The Court will enter a separate Order consistent with this Memorandum Opinion.

Signed on 08/11/2022

*Brenda T. Rhoades*          SD

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE